Kevin T. Snider, State Bar No. 170988
Matthew B. McReynolds, State Bar No. 234797
PACIFIC JUSTICE INSTITUTE
P.O. Box 276600
Sacramento, CA 95827
Tel. (916) 857-6900
ksnider@pji.org

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

FOOTHILLS CHRISTIAN CHURCH, THE GROVE CHURCH, SAN DIEGO JOURNEY COMMUNITY CHURCH,

Plaintiffs,

v.

KIM JOHNSON, in her official capacity as Director of the California Department of Social Services, ROBERT ANDRES BONTA, in his official capacity as Attorney General of the State of California,

Defendants.

Case No:  3:22-cv-00950-BAS-DDL

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS COMPLAINT

Date:  November 21, 2022
Time: NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT
Dept: 4B
Judge:  Hon. Cynthia A. Bashant

Complaint Filed: 06/28/2022

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ..................................................................................................................... 1

STATEMENT OF FACTS ........................................................................................................ 1

STANDARD OF REVIEW ....................................................................................................... 3

ARGUMENT .............................................................................................................................. 3

    I. The Churches have Article III standing under *Lujan* .................................... 3

    II. Sufficient facts are alleged for a pre-enforcement challenge .................... 4

    III. The Attorney General does not enjoy Eleventh Amendment immunity ........... 6

    IV. The Complaint provides adequate notice of challenged portions of the Act ..... 6

    V. The Complaint provides sufficient allegations for its free exercise claim ......... 7

        A. The statute excluding church preschools from the fifteen exemptions to licensure is not a neutral law of general applicability ................................. 8

        B. The exceptions to licensure for two named religious entities violates the First Amendment's religion clauses .......................................................... 11

        C. State meddling with religious services and activities conducted by church preschools violates the free exercise of religion ...................................... 12

    VI. Restrictions on free exercise are subject to strict scrutiny .................... 14

        A. Narrow Tailoring ................................................................................ 14

    VII. Complaint states a claim for interference with privileges and immunities ...... 16

    VIII. Under authority derived from the Act, the Churches are subject to compelled speech .................................................................................................. 18

    IX. Objections ....................................................................................................... 20

CONCLUSION ........................................................................................................................ 21

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) .......................................................................................3

*Bain v. Cal. Teachers Ass'n,*
  891 F.3d 1206 (9th Cir. 2018) .....................................................................3

*Bowsher v. Synar,*
  478 U.S. 714 (1986) .......................................................................................4

*Calvary Chapel Dayton Valley v. Sisolak,*
  982 F.3d 1228 (9th Cir. 2020) .....................................................................8

*Church of Lukumi Babalu Aye v. City of Hialeah,*
  508 U.S. 520 (1993) ...................................................................8, 14, 15, 16

*Conley v. Gibson,*
  355 U.S. 41 (1957) .........................................................................................3

*Dolan v. City of Tigard,*
  512 U.S. 374 (1994) .....................................................................................17

*Elrod v. Burns,*
  427 U.S. 347 (1976) .......................................................................................4

*Emp't Div. v. Smith,*
  494 U.S. 872 (1990) .......................................................................................8

*Everson v. Board of Education,*
  330 U.S. 1 (1947) .........................................................................................11

*Fla. Star v. B. J. F.,*
  491 U.S. 524 (1989) .....................................................................................15

*Frost & Frost Trucking Co. v. R.R. Com. of Cal.,*
  271 U.S. 583 (1926) .....................................................................................17

*Fulton v. City of Phila.,*
  141 S. Ct. 1868 (2021) ................................................................ 11, 12, 16

*Gateway City Church v. Newsom*,
   141 S. Ct. 1460 (2021) ................................................................................10, 11

*Gateway City Church v. Newsom*,
   No. 21-15189, 2021 U.S. App. LEXIS 4221 (9th Cir. Feb. 12, 2021) ......................10

*Gerritsen v. Warner Bros., Entm't Inc.*,
   112 F. Supp. 3d 1011 (C.D. Cal. 2015) ..................................................................20

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
   546 U.S. 418 (2006) ................................................................................................15

*Kennedy v. Bremerton Sch. Dist.*,
   142 S. Ct. 2407 (2022) ............................................................................................13

*Koontz v. St. Johns River Water Mgmt. Dist.*,
   570 U.S. 595 (2013) ................................................................................................17

*Larson v. Valente*,
   456 U.S. 228 (1982) ..........................................................................................11, 12

*Lemon v. Kurtzman*,
   403 U.S. 602 (1971) ................................................................................................13

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) .............................................................................................. 3, 4

*Maya v. Centex Corp.*,
   658 F.3d 1060 (9th Cir. 2011) ...................................................................................3

*McDonald v. City of Chi.*,
   561 U.S. 742 (2010) ................................................................................................17

*National Institute of Family and Life Advocates v. Becerra*,
   138 S. Ct. 2361 (2018) ......................................................................................16, 20

*New York Times Co. v. United States*,
   403 U.S. 713 (1971) ..................................................................................................4

*Nordyke v. King*,
   611 F.3d 1015 (9th Cir. 2010) .................................................................................17

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

*Nordyke v. King,*
    563 F.3d 439 (9th Cir. 2009) ........................................................................17

*North Valley Baptist v. McMahon,*
    696 F. Supp. 518 (E.D. Cal. 1988) ...........................................................6, 13

*Parham v. J.R.,*
    442 U.S. 584 (1979) .......................................................................................7

*Plessy v. Ferguson,*
    163 U.S. 537 (1896) .....................................................................................18

*Presser v. People of State of Ill.,*
    116 U.S. 252 (1886) ...............................................................................17, 18

*Puerto Rico v. Franklin Cal. Tax-Free Tr.,*
    579 U.S. 115 (2016) .....................................................................................13

*Roman Catholic Diocese of Brooklyn v. Cuomo,*
    141 S. Ct. 63 (2020) ..............................................................8, 9, 11, 15, 16

*Saenz v. Roe,*
    526 U.S. 489 (1999) .....................................................................................17

*Sec'y of Interior v. California,*
    464 U.S. 312 (1984) .......................................................................................4

*Slaughter-House Cases,*
    83 U.S. 36 (1872) ...................................................................................17, 18

*Southern Pacific Co. v. Denton,*
    146 U.S. 202 (1892) .....................................................................................17

*Stormans, Inc. v. Wiesman,*
    794 F.3d 1064 (9th Cir. 2015) ................................................................8, 14

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014) ...................................................................................5, 6

*Tandon v. Newsom,*
    141 S. Ct. 1294 (2021) .........................................................................*passim*

*Tandon v. Newsom,*
  992 F.3d 916 (9th Cir. 2021) ............................................................................10

*Tingley v. Ferguson,*
  47 F.4th 1055, 2022 U.S. App. LEXIS 25312 (9th Cir. Sept. 6, 2022) .................. 4, 5

*U.S. v. Cruikshank,*
  92 U.S. 542 (1876) ............................................................................17

*U.S. v. Vaello-Madero,*
  142 S. Ct. 1539 (2022) ............................................................................18

*Valley Forge Christian Coll. v. Am. United for Separation of Church and State,*
  454 U.S. 464 (1982) ............................................................................4

*W. & S. Life Ins. Co. v. State Bd. of Equalization,*
  451 U.S. 648 (1981) ............................................................................17

*Walker v. Sauvinet,*
  92 U.S. 90 (1876) ............................................................................17

**Constitutions and Statutes**

U.S. Const. amend. I ............................................................................ *passim*

U.S. Const. amend. IV ............................................................2, 7, 14, 16

U.S. Const. amend. V ............................................................2, 7, 14, 16

U.S. Const. amend. VII ............................................................................16

U.S. Const. amend. XI ............................................................................6

U.S. Const. amend. XIV ............................................................ 16, 17, 18

U.S. Const. art. III ............................................................................3

California Gov. Code § 11513 ............................................................................2

California Gov. Code § 11517 ............................................................................2

California Health & Safety Code § 1596.70-1596.895 ............................................1

§ 1596.76......................................................................................................6

§ 1596.80......................................................................................................1

§ 1596.792.......................................................................................... 7, 10, 11

§ 1596.792(a)-(o)..........................................................................................9

§ 1596.793............................................................................................ 7, 11, 12

§ 1596.852................................................................................................. 2, 7

§ 1596.853......................................................................................................2

§ 1596.853(a)................................................................................................7

§ 1596.875(c)............................................................................................. 2, 6

§ 1596.885.............................................................................................. 3, 5, 7

§ 1596.890......................................................................................................6

§ 1596.891......................................................................................................7

California Health & Safety Code § 1597.05(a) ..............................................19

California Health & Safety Code § 18897 ......................................................11


**Rules and Regulations**

22 California Code of Regulations § 101157 .............................................. 2, 6

22 California Code of Regulations § 101157(a)(5)(A)......................................7

22 California Code of Regulations § 101200 ..................................................2

22 California Code of Regulations § 101200(b) ..............................................7

22 California Code of Regulations § 101200(c)........................................... 2, 7

22 California Code of Regulations § 101223 .........................................1, 7, 8, 12, 19

22 California Code of Regulations § 101223(a)..............................................12

Federal Rule of Civil Procedure 12(b)(6)............................................... 3, 12

Federal Rule of Evidence 401 ...................................................................................20

Federal Rule of Evidence 402 ...................................................................................20

Federal Rule of Evidence 602 ...................................................................................21

Federal Rule of Evidence 802 ...................................................................................21

Federal Rule of Evidence 1002 .................................................................................21

# INTRODUCTION

Following 2,000 years of Christian tradition, three Churches[1] in the greater San Diego area seek to minister to children by providing a preschool.  The ministry to children is an integral part of the free exercise of these Churches' religion.  They bring this action to challenge the California Child Day Care Act (Cal. Health & Safety Code § 1596.70-1596.895) (Act)[2] which requires licensure of preschools.

# STATEMENT OF FACTS

Three Churches provide nursery care to infants and instruction to children through Sunday school classes (Compl. ¶¶ 28, 40, 52), and thereby carry on a two millennia old tradition.  *Id.* ¶¶ 56-64.  They wish to expand their ministries to children on Monday to Friday through a preschool.  *Id.* ¶¶ 76-78.  The State of California has enacted the Act along with an extensive regulatory scheme in which churches run their schools only at the pleasure of the Department of Social Services (DSS) by applying for and maintaining a license.[3]  Sec. 1596.80.

A precondition and continual condition for licensure is the waiver of core rights enumerated in the Bill of Rights.  Compl. ¶ 79.  These include the free exercise of religion such that church preschools cannot require attendance at religious services or participation in religious activities of students.  22 Cal. Code of Regulations § 101223.[4]  DSS has also interfered with expressive rights by compelling speech in two ways.  One is through signage and a signed notification regarding spiritual autonomy.  *Id.*  The second occurred when Foothills was required to provide the government's message on masking via state-approved curriculum.  Exhibit A, pp. 13-16, 45, ¶¶ 30(2), 33, 35, 38, 51, 99.[5]  As alleged in the Complaint, that was the government message regarding masking.  Compl. ¶ 19.  What is more,

---

[1] Unless specifically named, the three Plaintiffs are collectively referred to as "Churches."
[2] Unless otherwise noted, all statutory references are to the Health and Safety Code.
[3] Unless individually identified, Director Johnson and General Bonta are collectively referred to as "State."
[4] All regulations cited herein are from Title 22 of the California Code of Regulations.
[5] All references to exhibits are those filed by the State.

government social workers must be allowed to enter church grounds without warning or warrant in disregard of Fourth Amendment requirements.  Sec. 1596.852-1596.853.  They have done this to one of the Plaintiffs.  Compl. ¶ 17.

Likewise, social workers must be given a free hand to go through church files, Reg. 101200(c), which may contain sensitive notes from clergy, personnel, medical, educational, financial, and therapeutic records.  Compl. ¶ 79.  That is not all, violations of statutes and regulations carry criminal liability.  Reg. 101157; Sec. 1596.875(c).  Yet church employees running the preschool can be questioned without the benefit of Miranda warnings.  Reg. 101200.  Besides having to waive Fifth Amendment rights to remain silent, those alleging wrong-doing remain anonymous.  Sec. 1596.853.  There is no right to trial by jury (Cal. Gov. Code § 11517) and the rules of evidence are loosened in order to allow the government to more easily prove its case.  Cal. Gov. Code § 11513.  In the event a church preschool wants to go to trial, the "trial" is before a judge whose decision must be approved by DSS.  Compl. ¶ 19; Cal. Gov. Code § 11517.

Per the citations in the previous paragraph, the facts as alleged in the Complaint show that one of the Church-Plaintiffs—Foothills—has suffered through many of these deprivations of their liberties at the hands of DSS from September to December 2021.  This came as a result of Foothills being caught on the horns of a dilemma between adhering to the judgment of fit parents[6] as to the efficacy of keeping masks on their two through four-year-old children and a State health order requiring masking.  Ex. A, p. 45, ¶ 11.  DSS' position was and is that the State is the ultimate decider over what is best for children over parents.  *Id.*  DSS ultimately shut down a well-established church preschool and banned its director for life with

---

[6] See the parental complaints regarding masking at Ex. A, ¶ 41 (pp. 17-21) and ¶¶ 87-95.  See also, the testimony of the senior pastor (D. Hoffman) and the administrative pastor (K. Miller) of Foothills regarding the tug of war between DSS and the parents.  *Id.* ¶¶ 77-81.

contact with children and other preschools.[7]  The revocation of the license was due to a claim that the failure to mask was inimical to the health, welfare, safety, and morals of children per the Act, § 1596.885.  Ex. A.

Foothills wishes to restart its ministry during the weekday while maintaining the enjoyment of rights that much of society takes for granted.  Compl. ¶ 37.  The other two Churches seek to extend their ministry to children via a preschool without a corresponding waiver of constitutional rights.  Compl. ¶¶ 45, 55.  DSS says that is too much to ask.

## STANDARD OF REVIEW

In considering a Rule 12(b)(6) motion, the Court must accept as true all well-pleaded facts in a complaint, construe all allegations in the complaint liberally, and draw all reasonable inferences from those facts in favor of plaintiff as the non-moving party.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Thus, a motion under Rule 12(b)(6) should be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief, construing the complaint in the light most favorable to the plaintiff."  *Bain v. Cal. Teachers Ass'n*, 891 F.3d 1206 (9th Cir. 2018) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  The U.S. Supreme Court and Ninth Circuit have further noted that what must be pled in support of Article III standing is less than what would be required at successive stages such as summary judgment or trial.  *Maya v. Centex Corp.,* 658 F.3d 1060, 1068 (9th Cir. 2011) (reversing dismissal based on Article III) (citing and quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

## ARGUMENT

**I. The Churches have Article III standing under *Lujan.***

A plaintiff has Article III standing if (1) there is a concrete and particularized injury, (2) a causal connection between the injury and defendant's conduct, and (3) a likelihood that the

---

[7] Ultimate Factual Findings, "By all accounts, Foothills Preschool provided an excellent environment for children.  Parents who testified and those who wrote letters spoke highly of the school, the staff, and of Ms. Hugh's knowledge, skill, compassion, and engagement as a director."  ¶ 96.

injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Here there can be little dispute that the application of the Act and regulatory scheme has injured Foothills and that the injury is the result of the conduct of DSS. Foothills has been fined and closed by DSS under the authority of the Act.

The State invokes *Valley Forge Christian Coll. v. Am. United for Separation of Church and State*, 454 U.S. 464 (1982). Def. Mot., p. 7. There, the U.S. Supreme Court held that learning about the conveyance of surplus government property to a religious institution does not give a non-religious organization standing to complain about the donation in federal court. Would that Foothills' injury were so abstract. As Foothills' empty preschool classrooms attest, DSS' enforcement action was anything but a dream—it was and is a living nightmare. Moreover, loss of constitutional rights is an injury both concrete and profound. *See, Elrod v. Burns*, 427 U.S. 347, 373-74 (1976) (citing *New York Times Co. v. United States*, 403 U.S. 713 (1971)). A judgment that the Act and its implementing regulations are unconstitutional on its face or as applied to religious institutions will redress the injury.[8]

## II. Sufficient facts are alleged for a pre-enforcement challenge.

Skirting the obvious, the State initially avoids a discussion of Foothills and aims for what might seem to be easier targets—the San Diego Journey Church and The Grove Church. Def. Mot., p. 7. To this end, the Motion to Dismiss first focuses on pre-enforcement challenges, *id.*, taking as its starting point *Tingley v. Ferguson*, 47 F.4th 1055, 2022 U.S. App. LEXIS 25312 (9th Cir. Sept. 6, 2022). There, the Ninth Circuit held that the plaintiff did have standing even though the challenged law had not yet been enforced. Drawing from Supreme Court precedent to the same effect, the Court noted: "A plaintiff must allege an intention to engage in a course

---

[8] A court reviewing a multiple-plaintiff case may dispense with inquiring into the standing of each plaintiff as long as the court finds that one plaintiff has standing. *Bowsher v. Synar*, 478 U.S. 714, 721 (1986); *Sec'y of Interior v. California*, 464 U.S. 312, 319 n. 3 (1984). Because Foothills clearly has standing, the Court need not go through the *Lujan* prongs for the other two plaintiffs.

1   of conduct arguably affected with a constitutional interest, but proscribed by a statute, and

2   there exists a credible threat of prosecution thereunder." *Tingley*, at *16 (quoting *Susan B.*

3   *Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (further internal quotations and citations

4   omitted)).

5         The State then sets about to distinguish their own proffered authority, which found

6   standing for a pre-enforcement challenge. Def. Mot., p. 7. They are right in at least one

7   respect: there, the challenged statute had just been enacted and not yet enforced. Here, the Act

8   was enforced with ruthless effectiveness against Foothills, and it further effectuated a clear

9   warning to other nearby churches against undertaking any preschool ministry outside the

10  confines of DSS regulation.[9]

11        The State suggests there is no longer an active threat of enforcement against the

12  Plaintiffs, and thus no pre-enforcement challenge is available. In so doing, DSS contradictorily

13  clings to its claimed authority to make unannounced spot inspections, levy penalties, and refer

14  for prosecutions. Def. Mot., p. 3. But the Court reiterated that it is "not necessary that

15  Petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a

16  statute that he claims deters the exercise of his constitutional rights." *Id.* (internal quotations

17  and citations omitted). Rather, pre-enforcement review is permitted where the plaintiff "alleges

18  an intention to engage in a course of conduct arguably affected with a constitutional interest,

19  but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan*

20  *B. Anthony List v. Driehaus*, 573 U.S. at 159. As alleged in the Complaint, and acknowledged in

21  the Motion, Foothills' traumatic experience with DSS has not taken away its desire to minister

22  to young children through a preschool but has deterred it from doing so under the same

23  overreaching licensing scheme. Def. Mot., p. 5 (citing Compl. ¶¶ 36-37). "Nothing in this

24
25  [9] The State makes the peculiar claim that the causation element is missing because revocation of the
    license did not result from application of the Act. Not so. The State's own exhibit reads in relation to
26  grounds for shutting down the preschool, "[DSS] is enforcing its own policy." Ex. A, p. 46, ¶ 14.
    "Cause was established under . . . 1596.885 to discipline Foothills Christian Ministries' preschool." Ex.
27  A, p. 48, ¶ 21. See also, the Exclusion and Revocation Orders citing the Act. Ex. A, pp. 52-53.

28                         PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

                                            - 5 -

1  Court's decisions requires a plaintiff who wishes to challenge the constitutionality of a law to

2  confess that he will in fact violate that law," *id.* at 163, especially where there had been past

3  enforcement.  *Id.* at 164.[10]

4  **III. The Attorney General does not enjoy Eleventh Amendment immunity.**

5       General Bonta asserts that as Attorney General he does not have any direct connection

6  to, or responsibility for, enforcement of the Act.  Not so.  DSS' authority for taking civil and

7  administrative actions against facilities is not the exclusive means of enforcement.  Violations

8  of the Act subject the violator to criminal liability.  Sec. 1596.890.  Per statute, the DSS "shall

9  refer the case for criminal prosecution and/or civil proceedings."  Reg. 101157.  Further, DSS

10  must "[w]ork with the Department of Justice to assure that license revocations appear on

11  criminal records."  Sec. 1596.875(c).

12       The Attorney General's primary reliance in his motion on *North Valley Baptist v.*

13  *McMahon* actually serves to undermine the Attorney General's attempts at distancing himself

14  from enforcement of the Act.  There DSS had referred the case to the Attorney General, along

15  with thirteen other unlicensed facilities, for prosecution.  *North Valley Baptist v. McMahon*, 696 F.

16  Supp. 518, 523 (E.D. Cal. 1988).  The claim that the Attorney General has no obligations under

17  the Act and does nothing to enforce it is incorrect as to the law and false as to historical facts.[11]

18  **IV. The Complaint provides adequate notice of challenged portions of the Act.**

19       The State makes the claim that they do not know what laws are being challenged.  This

20  is mystifying.  The Complaint specifically identifies eight statutes from the Act and another

21  three implementing regulations.  The State's Motion to Dismiss discusses all the statutes and

22  two of the three regulations cited in the Complaint as follows:

23

24  [10] The Court clarified that the threat of future enforcement was applicable not only to *Susan B. Anthony*
*List*, but to the second organization that joined the lawsuit fearing similar future treatment.  *Id.* at 166.

25  In like manner, that holding applies to Journey Community Church and The Grove Church.
[11] Defendants have filed nine exhibits with their motion.  Absent is a declaration from the Attorney

26  General that the Dept. of Justice has not, does not, and will not take enforcement actions in support of

27  the Act.

28

- Sec. 1596.76 (preschools are subject to the Act)—Compl. ¶ 72; Def. Mot. 2;

- Sec. 1596.885 (DSS holds authority to revoke a license)—Compl. ¶ 16; Def. Mot. 3, 12;

- Sec. 1596.792 (14 exemptions to licensure)—Compl. ¶ 73; Def. Mot. 3, 12;

- Sec. 1596.793 (5 additional exemptions to licensure)—Compl. ¶ 73; Def. Mot. *passim*;

- Reg. 101223 (religious activities and services)—Compl. ¶¶ 79, 96; Def. Mot. 9, 15;

- Sec. 1596.852 (no probable cause)—Compl. ¶ 79; Def. Mot. 3;

- Sec. 1596.853(a) (search without oath or affirmation via request by "any person may request an investigation")—Compl. ¶ 79; Def. Mot. 3;

- Sec. 1596.891 (subject to criminal prosecution)—Compl. ¶ 84; Def. Mot. 3;

- Reg. 101157(a)(5)(A) (subject to criminal prosecution)—Compl. ¶ 86; Def. Mot. 13.

Oddly, the Motion to Dismiss does not cite to a crucial regulation put at issue in the Complaint. Regulation 101200(b) divests church preschools of their Fifth Amendment rights, i.e., no Miranda warnings. Compl. ¶ 79. The section also acts to violate parental rights so that children can be interviewed without parental consent. *Id.*[12] The State also ignores Reg. 101200(c) giving DSS the authority to search and seize records. This raises profound Fourth Amendment concerns in view of the sensitive nature of what can be reviewed in student and employee files. Compl. ¶ 79; Ex. A ¶ 67.

**V. The Complaint provides sufficient allegations for its free exercise claim.**

The Complaint states sufficient facts to prevail on its First Amendment claim. The licensing requirement violates the religion clauses in three separate ways. One section of the Act grants fifteen exemptions to the licensure requirements that churches do not enjoy. Sec. 1596.792. The next section grants five more exemptions, two of which give preferred treatment to two religious institutions to the exclusion of all other sects. Sec. 1596.793. (The

---

[12] "The statist notion that governmental power should supersede parental authority in *all* cases because *some* parents abuse and neglect children is repugnant to American tradition." *Parham v. J.R.*, 442 U.S. 584, 603 (1979) (emphasis in original).

State has managed to violate both religion clauses in the same Act—one by exclusion and the other by sectarian preference).  Finally, an implementing regulation prohibits preschools from requiring participation in religious activities or attendance at religious services.  Reg. 101223  These three laws will be addressed in turn.

**A. The statute excluding church preschools from the fifteen exemptions to licensure is not a neutral law of general applicability.**

Whether a law burdens the free exercise of religion, courts ask if the law "is neutral and of general applicability."  *Emp't Div. v. Smith*, 494 U.S. 872, 878-82 (1990); *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520 (1993).  The measuring stick for whether a law passes neutrality and general applicability has changed dramatically since 2019.  In 2020 a panel sitting for the Ninth Circuit explained that "the Supreme Court's recent decision in *Roman Catholic Diocese of Brooklyn v. Cuomo* . . . arguably represented a seismic shift in Free Exercise law . . . ."  *Calvary Chapel Dayton Valley v. Sisolak*, 982 F.3d 1228, 1233 (9th Cir. 2020).  Thus, it is first necessary to review the current test for whether a law is neutral and generally applicable.

Last year, the Supreme Court shook the legal landscape by laying down several rules for determining neutrality and general applicability.  One of those rules is that "government regulations are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat *any* comparable secular activity more favorably than religious exercise."  *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021) (citing *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) (*per curiam*)) (The emphasis on the word *any* is not made by the undersigned; it is the Supreme Court shouting at the Ninth Circuit).  Thus, legislation does not need to selectively prohibit "conduct motivated by religious belief" as described in *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1076 (9th Cir. 2015).  For example, even though the Governor of New York made comments targeting the ultra-orthodox Jewish community, the high court set those comments aside because of the presence of exceptions to business closures which synagogues did not enjoy.  *Roman Catholic*, 141 S. Ct. at 66-67.

As to exceptions, the majority opinion in *Roman Catholic* made note of eight exceptions on business closures.[13]  In his concurrence, Justice Gorsuch identified six more businesses which received a pass on the rules.[14]  Similarly, California carved out six business and social exceptions for indoor gatherings, but the faithful were kept outside.[15]  *Tandon*, 141 S. Ct. at 1297.

Like New York with its fifteen exemptions in a health order, the Complaint also identifies fifteen statutory exemptions to licensure.  Sec. 1596.792(a)-(o).[16]  Here the Act "contains myriad exceptions and accommodations for comparable activities, thus requiring the application of strict scrutiny."  *Tandon*, 141 S. Ct. at 1298.  In protest, the State calls these a "limited number of narrowly defined child care programs."  Def. Mot. 3:22-23.  Those adjectival modifiers for the term "child care program" standing alone do not provide any actual basis for a meaningful comparison to child care programs at a church.

A review of the Supreme Court's application of comparators in *Roman Catholic* and *Tandon* is helpful.  The comparators do not have to be a hand in glove fit.  For example, a bicycle repair shop and a chemical manufacturing plant seem far removed from a synagogue. *Roman Catholic*, 141 S. Ct. at 69.  Likewise, a liquor store and an accounting firm appear to be equally distant from a church.  *Tandon*, 141 S. Ct. at 1297.  On the other hand, the Supreme Court also pointed to very close comparators to houses of worship in *Roman Catholic* with

---

[13] These businesses were acupuncture facilities, camp grounds, garages, chemical manufacturing plants, microelectronics, and transportation facilities.  *Roman Catholic*, 141 S. Ct. 63, 66 (2020).

[14] Hardware stores, liquor stores, bicycle repair shops, signage companies, accountants, lawyers, and insurance agents.  *Roman Catholic*, 141 S. Ct. 63, 69 (2020) (J. Gorsuch, concurring).

[15] Hair salons, retail stores, personal care services, movie theaters, private suites at sporting events and concerts, and indoor restaurants.  *Tandon v. Newsom*, 141 S. Ct. 1294, 1297 (2021).

[16] (a) health facility, (b) health clinic, (c) community care facility, (d) family childcare home, (e) cooperative arrangement between parents, (f) care by a relative, (g) public recreation program, (h) public and private school extended day care program, (i) school parenting program or adult education childcare, (j) child daycare program that operates only one day per week, (k) child daycare program that offers temporary childcare services to parents, (l) any program that provides activities for children of an instructional nature in a classroom-like setting, (m) A program facility administered by the Department of Corrections and Rehabilitation, (n) crisis nursery, (o) preschool program operated by a local educational agency under contract with the State Department of Education.

airports[17] and group gatherings in *Tandon* with private suites at sporting events.  Whether near of far, the comparators are judged against the asserted government interest that justifies the regulation.  *Tandon*, 141 S. Ct. at 1296.  Here, the State has not articulated its specific government interest met by the exempted entities which churches could not meet.  That burden is on the State which it has failed to carry in its motion.

The § 1596.792 list of fifteen exceptions creates a preferred list in which preschools run by houses of worship find themselves excluded.  Because church preschools did not make the list, § 1596.792 is neither neutral nor generally applicable.  By placement in a disfavored category, the Churches' free exercise of religion is burdened.

The State claims that religious institutions are not burdened because the Act does not distinguish between secular and sacred users.  Def. Mot., p. 17.  This is the identical—but failed—argument that was made in *Gateway City Church v. Newsom*, No. 21-15189, 2021 U.S. App. LEXIS 4221 (9th Cir. Feb. 12, 2021).  "[W]e denied an injunction pending appeal simply because the County's order restricted 'gatherings' without specific reference to religion." *Tandon v. Newsom*, 992 F.3d 916, 932 (9th Cir. 2021) (Bumatay, J. dissenting).  As Judge Bumatay points out, the Supreme Court reversed the Ninth Circuit in *Gateway City Church v. Newsom*, 141 S. Ct. 1460 (2021).  Days after writing his dissent, the Supreme Court vindicated his analysis, reversing the Ninth Circuit's decision in *Tandon*.

The Ninth Circuit's error is one that the State is asking this Court to repeat here.  Namely, the restrictions on licensure of preschools "appl[y] equally . . . whether public or private, religious or secular" because they do "not 'single out houses of worship' for worse

[17] Gates at airport terminals are quite similar to religious services in terms of time (approximately one hour) and number of seats (100-440).  *See*, *Gateway City Church, et al. v. Newsom, et al*. Emergency Application for Writ of Injunction, at p. 4 accessed at https://www.supremecourt.gov/DocketPDF/20/20A138/169180/20210217114327065_Gateway%20 Church%20v.%20Newsom%20Emergency%20Application%20for%20Writ%20of%20Injunction.pdf.

treatment than secular activities." *Gateway*, at *2.  As discussed above, that is not the law as set forth in *Roman Catholic*, *Gateway*, and *Tandon*.[18]

**B. The exceptions to licensure for two named religious entities violates the First Amendment's religion clauses.**

In addition to those fifteen exceptions in § 1596.792, the Legislature has added five additional exceptions for "recreation programs conducted for children by the YMCA, Girl Scouts of the USA, Boy Scouts of America, Boys and Girls Clubs, Camp Fire USA, organized camps, or similar organizations."  Sec. 1596.793.[19]  The State asserts that because YMCA and the Boy Scouts are religious organizations, this saves the Act.  Def. Mot., p. 19.  The inclusion of two religious institutions does not provide redemption for the State.  Not only are the First Amendment's religion clauses violated by excluding religious persons or entities from a favorable exemption, a law also violates the First Amendment by preferring one religion over another.  If anything, giving preferential treatment to two sectarian entities while excluding all other religious sects is a prima facie showing of a lack of neutrality.

The state cannot "pass laws which aid one religion, aid all religions, or prefer one religion over another."  *Everson v. Board of Education*, 330 U.S. 1, 15-16 (1947).  This rule against state preference of one religious group over another serves as a merger of the Establishment and Free Exercise Clauses.  The two clauses are thus at times read together.  "The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another. . . . This constitutional prohibition of denominational preferences is inextricably connected with the continuing vitality of the Free Exercise Clause."  *Larson v.*

---

[18] Shortly after that trio of cases, the Supreme Court reviewed restrictions on foster care imposed by Philadelphia in which the City stopped referring children to Catholic Social Services.  Those restrictions did not differentiate between secular and sacred but applied equally to all.  *Fulton v. City of Phila.*, 141 S. Ct. 1868, 1876 (2021).  Nonetheless, the restriction was found constitutionally wanting.

[19] The State asserts that "similar organizations" are "organized camps" as defined in § 18897.  Def. Mot., p. 22.  That Section is in Division 13, whereas the Act is found in Division 2 of the Health and Safety Code.  Simply put, they are not related.

1   *Valente*, 456 U.S. 228, 244-245 (1982).[20]  The State's protests aside, the naming of two

2   exempted sectarian organizations fails to rescue the Act—it dooms it.

3          One other note regarding § 1596.793 is that the language provides for individualized

4   exemptions.  The Act does not apply to the "YMCA, Girl Scouts of the USA, Boy Scouts of

5   America, Boys and Girls Clubs, organized camps, or other similar organizations."  The statute

6   remains suspiciously silent as to how a "similar organization" is exempted and who does the

7   exempting.  It is self-evident that a State actor does this.  At the pleading stage, the language of

8   the statute and the allegations in the Complaint (Compl. ¶ 75) are enough.  "A law is not

9   generally applicable if it invites the government to consider the particular reasons for a person's

10  conduct by creating a mechanism for individualized exemptions." *Fulton*, 141 S. Ct. at 1873.[21]

11         **C.  State meddling with religious services and activities conducted by church**
           **preschools violates the free exercise of religion.**

12         Under the Act, Churches are bound by implementing regulations which interfere with

13  the free exercise of their religion.  "The licensee shall ensure that each child is accorded the

14  following personal rights . . . (5) To be free to attend religious services or activities of his/her

15  choice. (A) Attendance at religious services in or outside of the center shall be voluntary."  Reg.

16  101223(a).  The regulation goes on to state that "[t]he child's authorized representative shall

17  make the decisions about the child's attendance at religious services." *Id.*  The restriction is not

18  all.  A church operating a preschool must affirmatively "inform each child's authorized

19  representative" of these rights.  Reg. 101223.  Not surprisingly, the Churches object to this

20  interjection by the State into church activities as a burden on their speech and the free exercise

21  of their religion.

22

23  [20] The Complaint states a claim under the Free Exercise Clause.  The Defendants' Request for Judicial
    Notice of publications showing that the YMCA and Boy Scouts are religious raises Establishment

24  Clause concerns for which the Church-Plaintiffs were unaware.  If the Court is so inclined to grant the
    Defendants' motion, the Churches seek leave to amend, to reframe the cause of action as one for a

25  violation of the First Amendment's "religion clauses."
    [21] It is doubtful that the State allows an entity to self-declare as a "similar organization."  Discovery is

26  the proper method to determine how the assessment is made.  A motion under 12(b)(6) is not the
    proper vehicle for that determination.

27

28

When interpreting a regulation, a court begins with the plain language of the text. If it is clear, then the inquiry ends. *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016). Under the regulation, it stands as self-evident that a religious institution cannot require attendance at services or participation in faith-based activities of a pupil enrolled in its school. That an "authorized representative" of the child makes the decisions does not relieve the State of this constitutional infirmity.

As a secondary fallback position, the State states that a church can contract away these "personal rights." Def. Mot., p. 15. Where that escape hatch appears in the text, the Defendants do not say. The State further fails to explain how a church is to contract away the compelled speech requirements relative to the notice of personal rights to parents. Further, the State's position that the Churches "cooperate[] with the parents as decision-makers" (Def. Mot., p. 9) implicates health decisions of fit parents, e.g., masking. In contrast, the Churches hold to absolute truths on moral teachings and religious dogma which are not subject to negotiation with parishioners or parents. The State cannot force a church into that position.

The State runs away from the four corners of the text by relying on *North Valley Baptist v. McMahon*. *North Valley Baptist* turned entirely on the specific facts from a bench trial rather than an interpretation of the regulation. "The evidence adduced at trial demonstrates that each provision is perfectly compatible with the exercise of plaintiff's faith." *North Valley Baptist v. McMahon*, 696 F. Supp. 518, 531 (E.D. Cal. 1988). Not so with the Churches in this Complaint. Although *North Valley Baptist* "once promised to present formidable and sensitive questions of constitutional law," it ended as a fact-sensitive trial. *Id.* at 524.[22]

Because the plain meaning of the text of the regulation is clear, the State prefers to rely on litigation posturing from a 30-year-old case where DSS apparently made promises not to enforce the Act and its regulations against churches. Foothills has already suffered a loss of

---

[22] To the extent that the district court in *North Valley Baptist* analyzed First Amendment claims, it utilized *Lemon v. Kurtzman*, 403 U.S. 602 (1971). *Lemon* has been overruled by the Supreme Court. *See*, *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2427 (2022).

speech and Fourth and Fifth Amendment rights based on DSS' eagerness to wield the Act and regulations against them.  There is no reason to believe that the State will defer to the free exercise of religion any more than they have free speech, warrantless searches, or the right to remain silent.

Per the regulation, the State meddles with the singing, prayer, memorization of Scripture, and the sacraments by giving a parent veto power over a child's attendance or participation in these activities, when having voluntarily enrolled in a religious institution.  This violates the free exercise of the Churches' religion.

**VI. Restrictions on free exercise are subject to strict scrutiny.**

Strict scrutiny applies to laws that are not neutral and generally applicable.  *Stormans*, 794 F.3d at 1076.  Because the Act on its face or as applied is neither neutral nor generally applicable, "the government has the burden to establish that the challenged law satisfies strict scrutiny." *Tandon*, 141 S. Ct. at 1296.  To justify the burden on free exercise, the government carries the burden to demonstrate a compelling governmental interest that must be narrowly tailored to advance that interest. *Lukumi*, 508 U.S. at 531-32.  Though it is conceded that the State has a generalized compelling interest in the welfare of children, so do churches who have preceded California in ministering to children by 2,000 years.  As a matter of constitutional law, the State is wrong when it claims an exclusive interest in looking after children.  The First Amendment does not give the government that monopoly.

Conceding that there is a generalized compelling interest, this Opposition turns to narrow tailoring.

**A. Narrow Tailoring**

The two sections that grant a total of nineteen exceptions are not narrowly tailored for the same reason that they are not neutral and generally applicable.  The Churches already safely operate Sunday school classes.  The classes are comprised of religious instruction, music, and recreation.  These classes are run without the need for licensure each Sunday, and the Churches

1    wish to do essentially the same activities Monday through Friday.  The State has failed to

2    explain what the difference is between classes in a church on Sunday and classes in a church on

3    Monday or any other day of the week.  Further, the State cannot articulate how the activities of

4    the child day care programs that enjoy an exemption from licensure differ from church Sunday

5    school or preschools.  "[A] law cannot be regarded as protecting an interest 'of the highest

6    order' . . . when it leaves appreciable damage to that supposedly vital interest unprohibited."

7    *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 434 (2006) (quoting

8    *Lukumi*, 508 U.S. at 547 and *Fla. Star v. B. J. F.*, 491 U.S. 524, 541-42 (1989) (Scalia, J.,

9    concurring in part and concurring in judgment)).

10    The State cites *Gonzalez* for the proposition that a compelling interest exists in the

11    "uniform administration of the licensing requirement that would be undermined by exempting

12    Plaintiffs."  Def. Mot., p. 23.  *Gonzalez* supports the Churches.  An identical argument which

13    the State puts forward here was found wanting by the Supreme Court in *Gonzalez*.  According

14    to the State, permitting an exemption to churches "would open the floodgates to all manner of

15    claims for exemptions based solely on religious affiliation." *Id.*  The Supreme Court was not

16    sympathetic.  "The Government's argument echoes the classic rejoinder of bureaucrats

17    throughout history: If I make an exception for you, I'll have to make one for everybody, so no

18    exceptions." *Id.* at 436.

19    Although there may be instances in which the need for uniformity precludes exceptions,

20    here the Legislature has already provided a score of exceptions to licensure. *Id.*  Narrow

21    tailoring requires the State to show that "measures less restrictive of the First Amendment

22    activity could not address its interest . . ." *Tandon*, 141 S. Ct. at 1296-97.  The State has failed to

23    do that.  Instead, because the State allows the other child care programs to proceed with

24    precautions, it must demonstrate that "the religious exercise at issue is more dangerous than

25    those activities even when the same precautions are applied.  Otherwise, precautions that

26    suffice for other activities suffice for religious exercise too." *Id.* at 1297.  Here, the State must

27

28

do more than merely assert that the risk to children taught in church preschools is always greater than when instructed in secular child day care programs. *Tandon*, 141 S. Ct. 1294 (2021). Furthermore, "[a] government cannot 'reduce a group's First Amendment rights by simply imposing a licensing requirement.'" *Fulton v. Philadelphia*, 141 S. Ct. 1868 (2021) (J. Alito concurring) (quoting *National Institute of Family and Life Advocates v. Becerra*, 138 S. Ct. 2361 (2018)). That is precisely what the State is proposing in this case.[23]

As the Supreme Court admonished the Ninth Circuit, narrow tailoring "is not watered down; it really means what it says." *Tandon*, 141 S. Ct. at 1298 (quoting *Lukumi*, 508 U.S. at 546).

**VII. The Complaint states a claim for interference with privileges and immunities.**

Licensure requires that a church waive certain constitutional rights. These include the following: **First Amend.** (religion): cannot require participation of students in religious activities or attendance at religious services, (speech) compelled speech; **Fourth Amend.**: (a) warrantless searches, (b) seizure of records, (c) no oath or affirmation required for searches; **Fifth Amend.**: no Miranda warnings; **Seventh Amend.**: no right to a jury trial; **Fourteenth Amend.** (due process): (a) DSS functions as police, prosecutor, and judge, (b) daily fines even on days when the school is closed; (c) no neutral independent judge. Compl. ¶ 79. This imposes unconstitutional conditions on the Plaintiffs. Compl. ¶ 110. The enforcement of the licensure law for a church preschool abridges the Plaintiffs' privileges and immunities under the Fourteenth Amendment.

The last sentence of Section 1 of the Fourteenth Amendment reads:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

[23] The State has improperly included a news article regarding an Arkansas bill placing regulations on church day care. The statements by politicians are hearsay and thus inherently unreliable. *See*, the Churches' Objection. Moreover, according to the article, church-affiliated centers are exempt from licensure if they do not receive government money.

The bundle of rights that must be sacrificed in order to receive preschool licensure falls most naturally within the privileges and immunities clause.  In view of that, the court-made doctrine of unconstitutional conditions mirrors most closely the privileges and immunities clause.

When the State requires churches to relinquish fundamental liberties as a precondition and continual condition for ministering to children—as has been the case for two millennia— such stands as an unconstitutional condition.  "The unconstitutional conditions doctrine, vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up."  *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604 (2013).  A statute is subject to invalidation by the courts when it requires, "as a condition precedent," the "surrender and privilege secured . . . by the Constitution."  *Id.* (citing *Southern Pacific Co. v. Denton*, 146 U.S. 202, 207 (1892)).  In a licensing case the Supreme ruled that "[a] state is without power to impose an unconstitutional requirement as a condition for granting a privilege."  *Frost & Frost Trucking Co. v. R.R. Com. of Cal.*, 271 U.S. 583, 598 (1926).

Cases brought against a state or local government for unconstitutional conditions frequently rely on the Fourteenth Amendment.  *See*, *Dolan v. City of Tigard*, 512 U.S. 374, 383 (1994); (substantive due process) (*Frost, id.*); (equal protection ) (*W. & S. Life Ins. Co. v. State Bd. of Equalization*, 451 U.S. 648 (1981)).  That being said, reliance on privileges and immunities provides "a more straightforward path to this conclusion, one that is more faithful to the Fourteenth Amendment's text and history."  *McDonald v. City of Chi.*, 561 U.S. 742, 806 (2010).[24]

The State's reliance on the *Slaughter-House Cases*, where the Court determined that the privileges and immunities does not protect a citizen against the legislative power of his own State, 83 U.S. 36, 78 (1872), would relegate this Fourteenth Amendment right to navigable waters and travel.  Def. Mot. 24-25 (citing *Saenz v. Roe*, 526 U.S. 489 (1999); *Walker v. Sauvinet*, 92 U.S. 90 (1876); *U.S. v. Cruikshank*, 92 U.S. 542 (1876); *Presser v. People of State of Ill.*, 116 U.S.

---

[24] Justice Thomas' understanding of the privileges and immunities is at odds with decision in *Nordyke v. King*, 563 F.3d 439 (9th Cir. 2009) vacated and remanded in light of *McDonald v. City of Chi.  Nordyke v. King*, 611 F.3d 1015 (9th Cir. 2010).

252 (1886)).  Justice Thomas, joined by Justice Gorsuch, points to Justice Field's dissent who explains that denial of a citizen's equality of the "rights and privileges with others, was, to the extent of the denial, subjecting him to an involuntary servitude." *Slaughter-House Cases*, 83 U.S. at 91 (Field, J. dissenting).  Justice Thomas further points out that the limitation of the privileges and immunities clause was used to keep railroad cars racially segregated.  *United States v. Vaello-Madero*, 142 S. Ct. 1539, 1550-51 (2022) (Thomas, J. concurring) (citing *Plessy v. Ferguson*, 163 U.S. 537 (1896)).  The better view is that "[t]he fundamental rights, privileges, and immunities which belong to him as a free man and a free citizen, now belong to him as a citizen of the United States, and are not dependent upon his citizenship of any State." *Slaughter-House Cases*, 83 U.S. at 95 (Field, J. dissenting).  In view of that, it is the Churches' position that free exercise of religion, free speech, freedom from warrantless searches and seizures, and the right to remain silent are privileges and immunities of citizenship that the State cannot require a church to give up as a condition for running a preschool ministry.

Whether styled under the privileges and immunities (as stated in the second cause of action), due process through selective incorporation, or equal protection, the Complaint states adequate facts to state a claim under the unconstitutional conditions doctrine.[25]  Whatever provision of the Fourteenth Amendment is relied upon, the underlying legal issue is whether the Act and regulations requiring that the Churches give up core rights are constitutional.

Space does not permit a review of each of the rights that must be relinquished per the Act.  The remainder of the Opposition will discuss just one right—free speech.

## VIII. Under authority derived from the Act, the Churches are subject to compelled speech.

First, the Complaint alleges violations of free speech in two ways.  One is as applied and the other is a facial challenge to a regulation compelling speech.

---

[25] In the event that the Court is inclined to grant the motion as to the second cause of action, the Plaintiffs request leave to amend to either add claims under due process and equal protection, or a general claim for unconstitutional conditions in violation of the Fourteenth Amendment.

The Complaint alleges that DSS required the instruction of curriculum that contained a message that the Foothills preschool did not want to communicate.  Compl. ¶¶ 19, 79, 109. Ironically, the exhibit filed by the State in support of its motion proves that DSS officials required Foothills to adopt pro-mask instructional materials and to teach that view to the children.  Ex. A, pp. 13-16, 45.[26]  Further, to this end the administrative law judge acknowledged that First Amendment claims were brought as affirmative defenses.  *Id.* at 46.[27]

Director Johnson asserts that DSS' authority does not extend to "the content of any educational or training program of a facility."  Sec. 1597.05(a).  Not true.  The Director does not quote the entirety of § 1597.05(a).  It actually reads, "[L]icensing reviews of a child day care center shall be limited to health and safety considerations and shall not include any reviews of the content of any educational or training program of a facility."  From the actions of the DSS officials as alleged in the Complaint and in Ex. A, a government-approved message was required to be taught if deemed relevant to health and safety as DSS views it.

Turning to the facial challenge, Reg. 101223 provides that preschools cannot require children to attend religious services.  The restriction on free exercise is not all.  A church operating a preschool must affirmatively "inform each child's authorized representative" of these rights by giving each authorized representative a copy of a document which sets forth these "personal rights" and must gather a signature and date acknowledging receipt.  Further, this right to spiritual autonomy is to be posted on the walls of a church in a "prominent publicly accessible area."  Reg. 101223.  The regulation requires compelled (irreligious) speech

---

[26] Defendants' motion to dismiss devotes an entire section on whether challenging mask mandates and pandemic restrictions is justiciable.  Def. Mot., pp. 10-11.  Though interesting in the abstract, the Complaint before this Court does not bring a legal challenge to public health orders.  Allegations included in the Complaint on such restrictions are provided as the factual context in which the Act and its regulations were applied to one of the Plaintiffs.

[27] The essence of the ruling on this and other constitutional defenses was that in the administrative process, the Constitution does not matter, lacking jurisdiction.  Ex. A, 45-46.  He is mistaken.  The Constitution always matters.

by collecting a wet signature from parents and posting signs about this "personal right."  This is a message that the Churches do not wish to communicate.

The regulation violates the First Amendment in a nearly identical way as Assembly Bill 775.  There, the Legislature required pro-life clinics to inform women and girls where they could receive free or cheap abortions.  What was the State's rationale?  Licensure.  In an interlocutory appeal the Supreme Court struck down the law as violative of free speech.  *National Institute of Family and Life Advocates v. Becerra*, 138 S. Ct. 2361 (2018).

Whether as a facial or applied challenge to the Act, the Churches have alleged sufficient facts to show that DSS compels speech, thus denying Churches of a privilege and immunity guaranteed by the Constitution.[28]

**IX. Objections**

Plaintiffs offer the following objections to the Request for Judicial Notice of Exhibit H offered in support of Defendants' Motion to Dismiss.

Exhibit H is AL.com, *Alabama House passes bill on church day care regulations* (Feb. 01, 2018), https://www.al.com/news/2018/02/alabama_house_to_debate_bill_o.html.

Defendants' Request does not fall within the narrow circumstances in which news articles or other internet-derived articles may properly be judicially noticed, such as securities litigation where the issue is what generally reported information was available to the market.  *Gerritsen v. Warner Bros., Entm't Inc.*, 112 F. Supp. 3d 1011, 1028-30 (C.D. Cal. 2015) (denying Request for Judicial Notice, collecting cases and discussing narrow circumstances in which news articles can be so noticed).

**Objection:**  Relevance, Fed. R. Evid. 401, 402.  The newspaper article is comprised of statements that purported state what is in Alabama bill 86-5.  Those statements are not relevant to the facts within the four corners of the Plaintiffs' Complaint or the Act.

---

[28] If the Court is disinclined to view free speech as a privilege and immunity of citizenship, then the Churches seek leave to amend to add a First Amendment claim for free speech.

**Objection:**  Hearsay, Fed. R. Evid. 802.  The statements in the newspaper article describing the bill are hearsay.

**Objection:**  Best Evidence, Fed. R. Evid. 1002.  The bill itself is the best evidence of its content.

**Objection:**  Hearsay, Fed. R. Evid. 802.  The statements in the newspaper article by Rep. Pebblin Warren are hearsay.

**Objection:**  Lacks foundation, Fed. R. Evid. 602.  Anecdotal statements in the newspaper article regarding unlicensed child care facilities, the death of a five-year-old boy dying while in the van of a driver, and church-affiliated centers lack personal knowledge.

**Objection:**  Hearsay, Fed. R. Evid. 802.  Anecdotal statements in the newspaper article regarding unlicensed child care facilities, the death of a five-year-old boy dying while in the van of a driver, and church-affiliated centers are hearsay.

<u>**CONCLUSION**</u>

For the foregoing reasons, the State's Motion should be denied.

Dated: October 25, 2022                Respectfully submitted,

/s/Kevin T. Snider
Kevin T. Snider
Matthew B. McReynolds
PACIFIC JUSTICE INSTITUTE
CALIFORNIA OFFICE
P.O. Box 276600
Sacramento, CA 95827
T: (916) 857-6900

*Attorneys for Plaintiffs*