1
2
3
4
5
6
7
8           **UNITED STATES DISTRICT COURT**
9           **SOUTHERN DISTRICT OF CALIFORNIA**
10

| | |
|---|---|
| 11  FOOTHILLS CHRISTIAN | Case No. 22-cv-0950-BAS-DLL |
| 12  MINISTRIES; THE GROVE CHURCH; and JOURNEY COMMUNITY | |
| 13  CHURCH, | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |
| 14                              Plaintiffs, | **PLAINTIFFS' FIRST AMENDED COMPLAINT (ECF No. 24)** |
| 15         v. | |
| 16  KIM JOHNSON, in her official capacity | |
| 17  as the Director of the California Department of Social Services; and | |
| 18  ROBERT ANDRES BONTA, in his official capacity as the Attorney General | |
| 19  of the State of California, | |
| 20                              Defendants. | |
| 21 | |

22          The California Child Day Care Facilities Act (the "Act"), Cal. Health & Safety Code

23   §§ 1596.70 *et seq.*, enables private persons, firms, associations, partnerships, and

24   corporations to open and operate preschools in California, so long as they attain a license

25   to do so first.   To this end, the Act establishes a comprehensive licensing scheme,

26   regulated, overseen, and monitored by the California Department of Social Services

27   ("DSS").   The Act and the DSS regulations and rules promulgated thereunder enumerate

28   requirements and set benchmarks concerning health and safety.   To obtain a license,

applicants must verify they can comply with these requirements.  The DSS both assesses whether an applicant qualifies for a license and monitors licensees' continued compliance to determine whether they remain in good standing.  The DSS may levy fines against, suspend and/or revoke the licenses of, and enjoin violations committed by unlicensed and licensed but noncompliant  child daycare facilities.  The Act also makes "willful" or "repeated" violations a misdemeanor offense.  Cal. Health & Safety Code § 1596.890.

Plaintiffs The Grove Church ("Grove"), Journey Community Church ("Journey"), and Foothills Christian Ministries ("Foothills," together with Grove and Journey, "Plaintiffs") are churches located in San Diego County that maintain active child ministries.  (*See generally* First Am. Compl. ("FAC"), ECF No. 20.)  As an extension of those ministries, Plaintiffs seek to open or reopen preschools.  But Plaintiffs wish to operate preschools outside the confines of the Act, and they bring the instant lawsuit to strike down as unconstitutional the Act and its implementing regulations in their entirety.

This case principally sounds in the Free Exercise Clause of the First Amendment.  Plaintiffs claim the Act interferes with their religious conviction:  to administer to the enrollees of their preschools a curriculum in which attendance at religious events and participation in religious activities is mandatory.  Plaintiffs additionally allege the Act violates the Free Speech Clause and the Establishment Clause of the First Amendment and assert a legal theory that the Act violates the Due Process Clause of the Fourteenth Amendment.  As redress for these alleged harms, Plaintiffs seek injunctive and declaratory relief invalidating the Act, thereby permitting them to open and operate parochial preschools without licensure under the Act.

Defendants Kim Johnson, Director of the DSS, and Robert Bonta, the Attorney General of the State of California, now move to dismiss the FAC pursuant to both Federal Rule of Civil Procedure ("Rule") 12(b)(1) and Rule 12(b)(6).  (ECF No. 24 ("Motion").)  Defendants also request judicial notice of certain information and materials.  (ECF No. 24-1.)  Plaintiffs oppose the Motion (ECF No. 25 ("Resp.")) and submit their own

22cv0950

accompanying request for judicial notice (ECF No. 25-1).  Defendants reply. (ECF No. 26 ("Reply").)

The Court finds the Motion suitable for determination on the papers submitted and without oral argument.  *See* Fed. R. Civ. P. 78(b); CivLR 7.1(d)(1).  For the reasons stated below, the Court **GRANTS** Defendants' Motion to Dismiss the FAC.

## I.   BACKGROUND

### A.   The California Child Day Care Facilities Act

The Court gave an overview of the Act in a prior order on a motion to dismiss.  (*See* ECF No. 19 at 3:9–7:21.)  Therefore, the Court will summarize it only briefly here.

The Act in its current incarnation has existed since 1984, *see* Cal. Health & Safety Code § 1596.72, but California has regulated organized childcare in some form or another since 1913.[1]  The Act establishes a comprehensive licensing regime for daycare facilities and preschools.  *See* Cal. Health & Safety Code § 1596.76; *see also N. Valley Baptist Church v. McMahon*, 696 F. Supp. 518, 520 (E.D. Cal. 1988), *aff'd,* 893 F.2d 1139 (9th Cir. 1990).  To obtain a license to operate a child daycare facility, such as a preschool, an applicant must certify to the DSS that it is able to comply with the requirements of the Act and its regulations promulgated thereunder by the DSS.  *See, e.g.*, Cal. Health & Safety Code §§ 1596.856, 1596.97, 1596.81(a)–(b).  The Act and the implementing regulations "address a wide variety of matters potentially affecting the health and safety of children" enrolled at child daycare centers, including, *inter alia*: immunization of children and staff, *see id.* § 1596.7995; background checks for staff and volunteers, *see id.* §§ 1596.871,

---

[1] For a brief history concerning the roles government and private philanthropic organizations—namely religious ministries and charities—have played in administering social services in the United States, and the varying extent to which government has sought to regulate those private endeavors, *see* Carl H. Esbeck, *Government Regulation of Religiously Based Social Services: The First Amendment Considerations*, 19 Hast. Const. L. Q. 343, 350 (1992). In that scholarly work, Esbeck explains that governments "undertook a more affirmative role" in the provision of social services "[f]ollowing the Civil War, and increasingly during the first quarter of [the Twentieth Century]." *Id.* California's 1913 licensing measure roughly aligns with this timeline.

1596.877; medical training for staff, *see id.* §§ 1596.866, 1596.8661; and the physical integrity and safety of the daycare's premises, *see id.* §§ 1596.95, 1596.954, 1597.16.

The DSS acts as a monitoring and enforcement agency, ensuring continued compliance with the Act once providers have obtained their licenses. Cal. Health & Safety Code § 1596.878. This monitoring and enforcement power includes the power to "enter and inspect any [child daycare facility] at any time, with or without advance notice, to secure compliance with, or to prevent a violation of," the Act and its rules and regulations. *See id.* § 1596.852. Onsite inspections may be either prompted by a third-party complaint that alleges a reasonable basis to believe a violation exists, *id.* § 1596.853(a), or undertaken on the DSS' own accord, *see id.* § 1597.09. Several circumstances may instigate the DSS to conduct an onsite visit or inspection, including, but not limited to, when a license explicitly calls for an annual inspection, when a provider is on probation, when an employee or volunteer previously has been ordered out of a facility by the DSS, or when a provider's name is drawn by "a random sampling methodology" pursuant to the DSS' obligation to inspect 30 percent of facilities each year. *See id.* § 1597.09(b), (c)(1). The DSS must inspect all licensed facilities at least once within a three-year period. *Id.* § 1597.09(d).

In addition to monitoring, DSS also retains responsibility for enforcement of the Act. The DSS may issue citations to, and levy fines upon, unlicensed and noncompliant licensed facilities. *See* Cal. Health & Safety Code §§ 1596.98(a), 1596.99. The DSS also has authority to file an administrative action to suspend or revoke a provider's license. *See id.* § 1596.99(j)(3). To do so, the DSS generally must institute an administrative proceeding. *See id.* The Act also provides for criminal remedies, up to a misdemeanor or $1,000 fine, against a person "who willfully or repeatedly violates any provision of this [Act], or any rule or regulation promulgated under this [Act]." *Id.* § 1596.890(a).

In determining whether an applicant qualifies for a license under the Act, and whether it remains in good standing once licensed, the DSS may not consider "the content of any educational or training program of the facility." *Id.* § 1597.05(a). The Act explicitly

limits the DSS' review "to health and safety considerations" only.  *Id.*  Hence, the DSS may not deny, suspend, or revoke a license based on a facility's curriculum, so long as it does not otherwise violate the Act's health and safety requirements.  "In short, under the licensing scheme a day care center remains free to teach, or to not teach, on any subject and in any manner it deems fit."  *McMahon*, 696 F. Supp. at 521.

There are limited statutory exemptions from licensure under the Act. Those exemptions are based upon the type of activities and programs administered by the facility at issue.  *See* Cal. Health & Safety Code §§ 1596.792, 1596.793.  Whether the institution is religiously affiliated or not has no bearing on whether it qualifies for an exemption. Exempt institutions include childcare programs operated by state-regulated healthcare facilities, *see id.* § 1596.792(a)–(c); part-time parent cooperatives and childcare provided by relatives or shared between two families, *see id.* § 1596.792(d)–(f); programs operated by specified public entities when public schools are not in session, *see id.* § 1596.792(g)(1); extended daycare programs at private or public schools, *see id.* § 1596.792(h); school parenting or adult education childcare programs operated by school districts, *see id.* § 1596.792(i); temporary childcare once per week or when a parent is onsite, *see id.* § 1596.792(j)–(k); childcare provided by crisis nurseries and drug treatment facilities that house women and their children, *see id.* § 1596.792(m)–(n); and recreation programs operated by camp organizations, *see id.* § 1596.793. Additionally, state preschools, regulated by the California Department of Education, are exempt under the Act.  *See id.* § 1596.792(o).

## B.   The Complaint's Allegations and Legal Claims[2]

Plaintiffs are three churches located in San Diego County with active ministries for children.  (*See, e.g.*, FAC ¶¶ 1, 7–9, 17, 49, 52, 57–58.)  None of the Plaintiffs currently

---

[2] These facts are taken from the allegations in the Complaint.  The presumption of truth attaches to the Complaint's factual allegations, and the Court construes those allegations, and all reasonable inferences arising therefrom, in a light most favorable to Plaintiffs.  *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

are licensed to operate a child daycare facility, nor do any of the Plaintiffs currently operate an unlicensed facility.  (*See id.* ¶¶ 25, 37, 53, 62.)  As best the Court can tell, neither Grove nor Journey have ever sought or obtained a license from the DSS.  And while Foothills previously operated a licensed infant care center and preschool, it ceased doing so in March 2022 after the DSS unearthed repeated violations of the California Department of Public Health ("DPH")'s indoor masking orders for childcare settings, and instituted administrative proceedings to revoke Foothills' license.[3]  (*See id.* ¶¶ 25–37.)

Each Plaintiff is now prepared to open a preschool, which Plaintiffs view as an "extension" of their "current ministry to [their] children."  (FAC ¶¶ 46, 53, 62.)  Plaintiffs also allege that part of their religious beliefs regarding ministry to children require that only the children of parents who "want to work cooperatively with the Church-Plaintiffs on religious services and activities" may attend Plaintiffs' prospective preschools.  (*Id.* ¶ 76.)  That is, Plaintiffs do not intend "to grant autonomy to children with regard to religious activities and services" (*see id.* ¶ 4); the religious component of Plaintiffs' programs will be mandatory (*see e.g.*, *id.* ¶¶ 72–77).

Plaintiffs allege the Act requires them to attain a license to open and operate the preschools they envision.  (*See, e.g.*, *id.* ¶ 1.)  But Plaintiffs "do[] not want [] preschool[s] that operate[] at the pleasure of the [DSS] through the State's licensing scheme."  (*Id.* ¶ 97.)  Therefore, Plaintiffs have not sought licensure from the DSS.   Instead, on June 28, 2022,

---

[3] Foothills alleges the DSS conducted an unannounced inspection of its preschool in September 2021 after an anonymous complaint was lodged against it.  (FAC ¶¶ 29–30.)  Investigators remained onsite for hours and interviewed children without parental consent, presumably pursuant to Cal. Health & Safety Code § 1596.852.  (*Id.*)  The investigation disclosed violations of the DPH's indoor masking orders concerning COVID-19.  (*Id.* ¶ 30)  Plaintiffs allege the DSS "issued numerous fines against" Foothills' preschool for these violations.  (*Id.*)  Investigators from the DSS returned unannounced, again, in December 2021, at which time they "suspended the preschool's license, and closed down the preschool.  DSS also closed down the Foothills Christian Infant Program which had never been cited for any violation."  (*Id.* ¶ 34.)  Then, Foothills appealed the decision in a proceeding before an administrative law judge but did not prevail; its licenses for infant care and the preschool were thereby revoked.  (*Id.* ¶¶ 35, 37.)  Foothills declined to appeal the administrative law judge's decision or undertake any other endeavor to restore its license because, in its view, "even a victory would place the church preschool ministry under the continued control of DSS through licensing under the Act and regulatory scheme."  (*Id.* ¶ 37)

Plaintiffs commenced the instant action against Defendants Kim Johnson, the DSS Director, and Robert Bonta, the California Attorney General, both of whom are named in their official capacities, seeking to invalidate the Act and its regulations in their entirety. (*Id.* ¶¶ 1, 10–11.)

Plaintiffs press four claims: a Free Exercise claim (*see id.* ¶¶ 98–123), an Establishment of Religion claim (*see id.* ¶¶ 124–31), a Due Process claim (*see id.* ¶¶ 132–43), and a Free Speech claim (*see id.* ¶¶ 144–54). As relief, they seek a "declaration that application of [the Act] to houses of worship violates the First and Fourteenth Amendments," and an "injunction permanently enjoining" Defendants from enforcing the Act. (*Id.* at 34 ¶¶ 1–2.)

The Free Exercise Claim. Plaintiffs hold the sincere religious belief that they "are mandated to spread the Gospel and make disciples, which of necessity requires teaching children." (FAC ¶ 73.) That belief compels Plaintiffs to establish preschools as extensions to their existing ministries for children, and to administer a uniform, mandatory religious curriculum to their students. (*See id.* ¶¶ 70–71, 76.) Accordingly, Plaintiffs aver they cannot provide "personal religious autonomy" to the children enrolled at their preschools while remaining true to their religious convictions. (*Id.* ¶ 117.) However, Plaintiffs argue that the Act's "implementing regulations" will "forc[e] these Church-Plaintiffs to grant autonomy to children with regards to religious activities and services." (*Id.* ¶ 4.)

Plaintiffs allege the Act interferes with their free exercise of these religious beliefs. But Plaintiffs do not identify a single provision of the Act that conflicts with their "faith-based commitment" to administer uniform, religious education at their preschools. Rather, they allege a single DSS regulation infringes upon this sincerely held belief: Cal. Code Regs. tit. 22, § 101223(a)(5), or, as one of this Court's sister tribunals once referred to it, the "religious services provision." *See McMahon*, 696 F. Supp. at 520.

The religious services provision states, in pertinent part:

(a)  The licensee shall ensure that each child is accorded the following personal rights:

- 7 -

22cv0950

\*     \*     \*     \*

> (5)   To be free to attend religious services or activities of his/her choice.
>
>> (A)   Attendance at religious services in or outside of the center shall be voluntary.  The child's authorized representative shall make decisions about the child's attendance at religious services.

Cal. Code Regs. tit. 22, § 101223(a)(5).  The regulation in which the religious services provision is nestled also confers several other "personal rights" to children enrolled in licensed child daycare facilities.[4]  *Id.* § 101223(a)(1)–(5).  The DSS requires providers to ensure each child is afforded these personal rights, *see id.* § 101223(c), and to inform each child's authorized representative of these rights, *see id.* § 101223(b).

Plaintiffs interpret the religious services provision as *requiring* preschools operated by houses of worship to provide all children autonomy with respect to religious education and training.  (FAC ¶ 116.)  They, therefore, read the religious services provision to implicitly prohibit parochial preschools from instituting compulsory attendance at religious events and participation in religious activities.  (*Id.* ¶¶ 117–18)  Accordingly, Plaintiffs allege this DSS regulation "imposes a substantial burden on the free exercise of [their] religion." (*Id.* ¶ 118.)

Plaintiffs also allege the ministerial exception forbids the state government from removing their preschool director, temporarily or permanently, from their post.  (*See id.* ¶¶ 38–41, 107–115.)  Foothills claims injury where it was not allowed to retain the preschool director of its choice, whom it claims occupied a ministerial position in the church.  (*Id.*)  Foothills claims the director was unlawfully removed from her post because

---

[4] Those other "personal rights" include, *inter alia*:  (1) "dignity in . . . personal relationships with staff"; (2) "safe, healthful and comfortable accommodations"; and (3) freedom "from corporal or unusual punishment, infliction of pain, humiliation, intimidation, ridicule, coercion, threat, [and] mental abuse." Cal. Code Regs. tit. 22, § 101223(a)(1)–(5).

22cv0950

she acted in accordance with the church's sincerely held religious beliefs regarding parental authority when it comes to the health of children.  (*Id.* ¶¶ 111–14.)  Plaintiffs claim that Foothills' free exercise of religion demands Foothills be allowed to select "persons serving in a ministerial capacity," such as its preschool director.  (*Id.* ¶ 111.)  Plaintiffs provide no legal basis for extending the ministerial exception, which the Ninth Circuit has held is an affirmative defense, as its own independent claim.  *Puri v. Khalsa*, 844 F.3d 1152, 1158 (9th Cir. 2017).

Plaintiffs also assert DSS violated their free exercise rights when, under the authority of the Act, the agency inspected Foothills for violation of the state's masking requirement in place at the time.  Plaintiffs allege that DSS' subsequent revocation of Foothills' license and removal of its preschool director infringed upon Foothills' sincerely held belief that fit parents hold the power to make health decisions when it comes to their children.  (FAC ¶ 26.)  Therefore, when parents instructed their children not to wear masks at preschool, and indeed the children refused to wear masks at their parents' direction, it was not in Foothills' religious belief system to contravene that.  (*Id.* ¶¶ 26–30.)  The FAC goes on to allege that because of Foothills' staff's adherence to this belief and thus allowance for children not to mask at the preschool, the DSS penalized Foothills through fines and, eventually, through shutting the preschool down and removing its director.  (*Id.* ¶ 34, 36.)  Plaintiffs assert that this course of events contravened Foothills' right to free exercise of religion in violation of the First Amendment.

<u>The Establishment of Religion Claim</u>.  Plaintiffs claim that the Act violates the Establishment Clause by creating "a carve out for two sectarian organizations which enjoy exemption privileges under the Act."  (FAC ¶ 6; *see also id.* ¶¶ 82–83, 125, 127.)  Plaintiffs assert this claim because the Act enumerates five entities as exempted from licensure when they are claimed as recreation programs, and two of the entities, the Boy Scouts and the YMCA, are religious organizations.  (*Id.* ¶¶ 103, 125, 127.)

Plaintiffs also contend the Act violates the ministerial exception under the Establishment Clause.  (*See id.* ¶¶ 128–31.)  Still, as regarding Plaintiffs' free exercise

claim, Plaintiffs cite to no caselaw demonstrating a ministerial exception in the Establishment Clause, and generally repeat the same ministerial exception arguments already made under their free exercise claim.  (*Compare id.* ¶¶ 107–15, *with id.* ¶¶ 128–31.)

Due Process Claim.  Plaintiffs allege the Act imposes unconstitutional conditions as a requirement of licensure under the Act.  (FAC ¶¶ 132–43.)  To acquire and maintain a license, Plaintiffs aver they must waive constitutional rights guaranteed to them by the Fourth, Fifth, Sixth, and Seventh Amendments.  (*See id.* ¶¶ 132–37.)  For example, Plaintiffs claim that by submitting themselves to:

- Cal. Health & Safety Code § 1596.852, which permits the DSS to enter and inspect facilities unannounced, and Cal. Code Regs. tit. 22, § 101200(c), which permits the DSS to review and remove files, Plaintiffs are relinquishing rights secured by the Fourth Amendment. (*See id.* ¶ 134.)

- Cal. Code Regs. tit. 22, § 101200(b), which permits the DSS to interview staff without notice of their right to remain silent, in combination with Cal. Health & Safety Code § 1596.890, which exposes those who violate the Act to criminal repercussions, Plaintiffs are relinquishing rights secured by the Fifth Amendment. (*See id.* ¶ 135.)

- Cal. Health & Safety Code § 1596.99(j)(3), which relegates license-suspension and revocation proceedings to an administrative tribunal as opposed to a civil one with the option of a jury, Plaintiffs are relinquishing rights secured by the Sixth and Seventh Amendments. (*See id.* ¶¶ 136–37.)

Plaintiffs style this "unconstitutional-conditions" theory of the Act's invalidity as a claim arising under the Due Process Clause of the Fourteenth Amendment.  (*Id.* ¶ 142 "The rights listed above are enumerated in the Bill of Rights and made applicable to the States via the Fourteenth Amendment.")

Free Speech Claim.  Plaintiffs make a claim under the First Amendment Free Speech clause, alleging the implementing regulations of the Act that require daycares to notify

parents that attendance at religious services should be on a completely voluntary basis, constitute unconstitutional compelled speech.  (*See, e.g.*, *id.* ¶ 4 ("What is more, implementing regulations . . . compel speech via a notification to parents of this right to spiritual autonomy while in the preschool.").)  Plaintiffs allege that in complying with  Cal. Code Regs. tit. 22, § 101223(b), which provides for daycares to post signs and have parents sign forms acknowledging receipt of this information, Plaintiffs are relinquishing their rights secured by the First Amendment because the regulation compels speech.  (*See* FAC ¶ 140.)

Plaintiffs assert that this mandatory notification contains a "message [that] is not something which the Church-Plaintiffs wish to communicate to the public.  Instead, the Church-Plaintiffs wish to communicate to parents and the public that the school requires that pupils enrolled in the preschool attend religious services and engage in full participation in religious activities consistent with the faith and practices of the respective church." (*Id.* ¶ 148.)

Plaintiffs also appear to allege a compelled speech claim regarding past DSS actions where "DSS investigators sent pro-mask-wearing curriculum to Foothills preschool to communicate to the children." (*Id.* ¶ 32.)  This occurred during the period where Foothills operated its daycare and Plaintiffs claim such curriculum "was not the message that the preschool wanted to communicate," but the daycare communicated it to avoid DSS citations and fines.  (*Id.*)

## II.   Request for Judicial Notice

Under Federal Rule of Evidence 201(b), a court may judicially notice a fact that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  Where a party seeks judicial notice of a document, the Rule 201(b) inquiry is two-fold.  First, the court must consider whether the document is from "a source whose accuracy cannot reasonably be questioned." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (citation omitted).  Second, the court

must "consider—and identify—which fact or facts it is noticing from the document." *Id.* "Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Id.* Facts subject to judicial notice may be considered on a motion to dismiss, *see Maiman v. Talbott*, No. SACV 09-0012 AG (ANx), 2011 WL 13065750, at *2 (C.D. Cal. Aug. 29, 2011), as well as on a facial challenge to subject-matter jurisdiction, *Chaudry v. Cnty. of San Diego*, No. 21cv1847-GPC (AHG), 2022 WL 17652794, at *3 (S.D. Cal. Dec. 13, 2022). However, the court may deny a request for judicial notice of facts that are not relevant to the question at issue. *See Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006); *see also Flick v. Liberty Mut. Fire Ins. Co.*, 205 F.3d 386, 393 n.7 (9th Cir. 2000).

In connection with their briefing on this motion, Plaintiffs seek to have the Court judicially notice the DSS form entitled "PERSONAL RIGHTS – Child Care Centers." (ECF No. 25-1, Ex. 1.) The DSS form is subject to judicial notice as an agency form available on the agency's website. *Dotson v. Price*, 399 F. Supp. 3d 617, 622 n.41 (E.D. La. 2019). Defendants do not oppose or otherwise question the authenticity of the document. Here, the Court takes judicial notice that the form is one that DSS mandates child daycare centers give to all parents. The Court does not take judicial notice as to the truth of its contents, merely that it is the form DSS requires child daycare centers to give to all parents. Accordingly, Plaintiffs' request for judicial notice of the DSS form is **GRANTED IN PART**. (ECF No. 25-1, Ex. 1.)

Both Plaintiffs and Defendants seek judicial notice for records related to the state administrative proceeding that led to the revocation of Foothills' license and the removal of its preschool director. (ECF No. 24-1, Exs. A–B; ECF No. 25-1, Ex. 2.) However, as discussed below, the details of the proceedings are irrelevant to the case at hand and therefore both of the parties' requests for judicial notice of these documents are **DENIED IN PART**. (ECF No. 24-1, Exs. A–B; ECF No. 25-1, Ex. 2.)

Defendants also seek judicial notice of various official agency documents related to the COVID-19 pandemic and posted online.  (ECF No. 24-1, Exs. C– E.)  Although such documents are subject to judicial notice, they are largely not relevant to the issues at hand.  The Court shall only take judicial notice of the fact, in Exhibit E, that "after March 11, 2022, the universal masking requirement for K-12 and Childcare settings terminated." (ECF No. 24-1, Ex. E at 1/4.)  As noted in this Court's prior order, the Masking Guidance is an official state-agency document, posted online by the DPH to its official website.  (ECF No. 19 at 12:23–13:8.  Plaintiffs do not contest otherwise.  As such, it is a judicially noticeable public record.  *See, e.g.*, *Transmission Agency of N. Cal. v. Sierra Pac. Power Co.*, 295 F.3d 918, 924 n.3 (9th Cir. 2002) (instructing judicial notice of agency documents is appropriate where there is no dispute as to authenticity).  And the fact of which this Court takes judicial notice—that DPH lifted indoor masking requirements for childcare settings in March 2022—not only is uncontroverted but also is precisely the sort of fact that is judicially noticeable.  *See Metroflex Oceanside LLC v. Newsom*, 532 F. Supp. 3d 976, 980 (S.D. Cal. 2021) (taking judicial notice of "information about the COVID-19 virus, government orders related to the COVID-19 pandemic, and rulings of other federal courts").

Therefore, Defendant's request for judicial notice as to Exhibits C and D is hereby **DENIED IN PART** without prejudice.  (ECF No. 24-1.)  Defendant's request for judicial notice as to the termination of the masking requirement, noted in Exhibit E, is hereby **GRANTED IN PART**.  (*Id.*)

## III.   LEGAL STANDARDS

### A.   Federal Rule of Civil Procedure 12(b)(1)

Under Rule 12(b)(1), a party may move to dismiss a claim based upon the court's lack of subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock W., Inc. v. Confederated Tribes of the Colville Rsrv.*, 873 F.2d 1221, 1225 (9th Cir. 1989).

22cv0950

A jurisdictional attack under Rule 12(b)(1) can be either facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

In a facial attack, the challenger asserts that the allegations in the complaint are insufficient to invoke federal jurisdiction, and the court is limited in its review to the allegations in the complaint. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). When a movant presses a facial attack, the court assumes the truth of the allegations in the complaint. *Lee*, 227 F.3d at 1242.

By contrast, in a factual attack, the challenger provides evidence an alleged fact in the complaint is false, thereby resulting in a lack of subject-matter jurisdiction. *Meyer*, 373 F.3d at 1039. Therefore, under a factual attack, the allegations in the complaint are not presumed to be true, and the "district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

Where, as here, a Rule 12(b)(1) motion is brought alongside a Rule 12(b)(6) motion, it is appropriate for the court to first consider and address the disputed jurisdictional issues under the former before analyzing the merits of a claim under the latter. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) ("The jurisdictional question of standing precedes, and does not require, analysis of the merits." (citation omitted)). If, upon analysis of the Rule 12(b)(1) motion, the court finds it lacks subject-matter jurisdiction over the action or a claim pressed therein, it need not address the merits issues raised in the collateral Rule 12(b)(6) motion. *Toyota Landscaping Co., Inc. v. S. Cal. Dist. Council of Laborers*, 11 F.3d 114, 119 (9th Cir. 1993); *Prather v. AT&T Inc.*, 996 F. Supp. 2d 861, 871 n.8 (N.D. Cal. 2013), *aff'd sub nom. Prather v. AT&T, Inc.*, 847 F.3d 1097 (9th Cir. 2017) ("Having concluded that it lacks subject matter jurisdiction over [plaintiff's] claim, the Court need not—and indeed cannot—address [d]efendants' alternate grounds for dismissal under [Rules] 12(b)(6) and 9(b).").

22cv0950

**B.      Federal Rule of Civil Procedure 12(b)(6)**

A Rule 12(b)(6) motion tests the legal sufficiency of the allegations underlying the claims in a complaint. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The procedural posture on a Rule 12(b)(6) motion requires the court to accept all factual allegations pleaded in the complaint as true and to construe those allegations, and draw all reasonable inferences therefrom, in favor of the plaintiff. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). To avoid Rule 12(b)(6) dismissal, a complaint must plead sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2008) (citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

**C.      Dismissal With or Without Prejudice**

When a court dismisses a complaint, it must then decide whether to grant leave to amend. Under Rule 15(a)(2), granting leave to amend rests within the trial court's sound discretion. *Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 343 (9th Cir. 1996). The Ninth Circuit has held that leave to amend should be freely granted. *See Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).

However, the court may deny leave to amend for reasons of "repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). For instance, when a complaint is dismissed for failure to state a claim, a court should not grant leave to amend if the "court determines that allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008) (citations omitted).

In particular, if the plaintiff has previously amended his complaint, the court's "discretion to deny leave to amend is particularly broad." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (citation omitted). This is because, when granted leave to amend, the plaintiff must amend his complaint to comply with the district court's instructions. If he fails to do so, the district court is well within its discretion to dismiss his case with prejudice. *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018).

## IV.   ANALYSIS

Defendants move for dismissal of the FAC on several grounds. (*See generally* ECF No. 24.) First, Defendants assert Plaintiffs have again failed to establish Article III standing to challenge the Act because they fail to demonstrate a sufficient injury to bring a pre-enforcement action and seek inappropriate relief for past harms. Second, Defendants contend Plaintiffs have failed to state a claim regarding the Free Exercise Clause because the Ninth Circuit's precedent forecloses the claim and, even if it did not, the law would survive constitutional scrutiny. And third, Defendants argue the remaining three claims of the FAC are simply non-cognizable.

### A.   Standing

Defendants mount a facial attack against Plaintiffs' case by asserting that the allegations in Plaintiffs' FAC are insufficient to invoke federal jurisdiction. *Meyer*, 373 F.3d at 1039. For the purposes of this analysis, therefore, the Court shall assume the allegations in the FAC are true. *Lee*, 227 F.3d at 1242.

It is neither the role of federal courts "to issue advisory opinions nor to declare rights in hypothetical cases." *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc). Article III, Section 2 of the Constitution grants the federal judiciary power to adjudicate only "live 'cases or controversies.'" *Id.* "The doctrine of standing gives meaning to these constitutional limits by 'identify[ing] those disputes which are appropriately resolved through the judicial process[.]'" *Susan B. Anthony List v.*

*Driehaus*, 573 U.S. 149, 157 (2014) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

To establish standing, a plaintiff must demonstrate the irreducible constitutional minimum of: (1) an injury-in-fact vis à vis "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) causation—that the injury is "fairly traceable to the challenged action of the defendant"; and (3) redressability—that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61 (citations omitted).

"Each element of standing 'must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation." *Maya*, 658 F.3d at 1068. To survive a facial Rule 12(b)(1) challenge to standing, a plaintiff "must 'clearly . . . allege facts demonstrating' each element." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Werth v Seldin*, 422 U.S. 490, 518 (1975)). At this stage, the Court presumes to be true the factual allegations in the pleadings, and construes in favor of the plaintiff all reasonable inferences that emanate therefrom. *See Lujan*, 504 U.S. at 561 (instructing district courts to "presum[e] that general allegations embrace those specific facts that are necessary to support the claim" on a Rule 12(b)(1) facial challenge); *see also Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 279 (7th Cir. 2020) ("A facial attack tests whether the allegations, taken as true, support an inference that the elements of standing exist." (citation omitted)); *see also John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 737 (2d Cir. 2017) ("When the defendant asserts a 'facial' challenge to standing . . . it remains the case that courts should continue to draw from the pleadings all reasonable inferences in the plaintiff's favor[.]").

Standing presents particularly unique issues where, as here, the plaintiff brings an action challenging the constitutionality of an act before the act has been enforced against it. *See Tingley v. Ferguson*, 47 F.4th 1055, 1067 (9th Cir. 2022), *cert. denied,* 144 S. Ct. 33, 217 L. Ed. 2d 251 (2023) ("A 'recurring issue' for federal courts is determining when

the threat of enforcement creates a sufficient injury for a party to have standing to bring a pre-enforcement challenge to a law [on constitutional grounds.]").  To bring a pre-enforcement challenge, a plaintiff must demonstrate:  (1) it intends "to engage in a course of conduct arguably affected with a constitutional interest"; (2) that such course of conduct is "proscribed by a statute"; and (3) "there exists a credible threat of prosecution thereunder." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979); *see also Driehaus*, 573 U.S. at 158–59 (same).  This iteration of *Lujan*'s standing analysis "is derived from the well-recognized principle that a person need not suffer prosecution or other enforcement action in order to raise a constitutional objection to a statute." *Vermont All. for Ethical Healthcare, Inc. v. Hoser*, 274 F. Supp. 3d 227, 238 (D. Vt. 2017) (citations omitted).  The absence of any one of the elements required for a pre-enforcement challenge dooms the plaintiff's standing.

Standing is a claim-by-claim analysis.  *See California v. Azar*, 911 F.3d 558, 570 (9th Cir. 2018).  "[A] plaintiff must demonstrate standing for each claim [it] seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).  "Suffering one species of injury does not confer standing on a plaintiff to press claims based on another species of injury, even if the injuries share a common genus." *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 733 (1st Cir. 2016); *see also Blum v. Yaretsky*, 457 U.S. 991, 999 (1982) ("Nor does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which [it] has not been subject.").

### 1.    Standing in the Context of the Free Exercise Clause

The Free Exercise Clause of the First Amendment provides, "Congress shall make no law . . . prohibiting the free exercise" of religion.  U.S. Const. Amend. I.  The Free Exercise Clause is applicable to the States under the terms of the Fourteenth Amendment. *See Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940).  "The Clause protects not only the right to harbor religious beliefs inwardly and secretly.  It does perhaps its most important work by protecting the ability of those who hold religious beliefs of all kinds to live out

their faiths in daily life through 'the performance of (or abstention from) physical acts.'" *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 524 (2022) (quoting *Emp. Div., Dep't of Human Res. of Ore. v. Smith*, 494 U.S. 872, 877 (1990)).

Modern Supreme Court jurisprudence "has dispensed with rigid standing requirements" for First Amendment free speech and free exercise claims. *Tingley*, 47 F.4th at 1066–67 (quoting *California Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1094 (9th Cir. 2003)). But to acquire standing to pursue a Free Exercise claim, a plaintiff still must, at a minimum, show there exists some conflict between one of its religious convictions and a challenged governmental action. *See, e.g.*, *McGowan v. Maryland*, 366 U.S. 420, 429 (1961) (holding appellants had "no standing to raise" a free exercise claim where they "allege only economic injury to themselves; they do not allege any infringement of their own religious freedoms"); *Sch. Dist. of Abington Twp., Pa. v. Schempp*, 374 U.S. 203, 224 n.9 (1963) (holding "the requirements for standing to challenge state action under . . . the Free Exercise Clause . . . include proof that particular religious freedoms are infringed"); *United States v. Top Sky*, 547 F.2d 483, 485 (9th Cir. 1976) (finding a criminal defendant, who had been convicted of selling bald eagle feathers in violation of the Bald Eagle Protection Act, lacked standing to raise a free exercise challenge aimed at that Act because he did not aver the conduct for which he was prosecuted was religiously, as opposed to commercially, motivated). Without these sorts of allegations, the plaintiff fails to allege it suffered an injury-in-fact. Indeed, "[t]he [Supreme] Court has held[] a free exercise plaintiff generally must 'show that his good-faith religious beliefs are hampered before he acquires standing to attack a statute under the Free-Exercise Clause.'" *Am. Legion v. Am. Humanist Ass'n*, 588 U.S. 29, 82 (2019) (Gorsuch, J., concurring) (quoting *Braunfeld v. Brown*, 366 U.S. 599, 615 (1961) (Brennan, J., concurring and dissenting)); *see Harris v. McRae*, 448 U.S. 297, 321 (1980) ("[I]t is necessary in a free exercise case for one to show the coercive effect of the enactment as it operates against him in the practice of his religion." (citation omitted)).

### i.  Licensure Requirement

As noted by Defendants (ECF No. 24 at 7:17–8:8), and in this Court's prior order on the first motion to dismiss (ECF No. 19 at 28:11), indignation is not injury and Plaintiffs have provided no further grounds for standing to challenge the licensure requirement itself beyond that they do not want a preschool that operates at the pleasure of DSS through the State's licensing scheme (FAC ¶ 97).  Having already analyzed this in its prior order, given Plaintiffs the opportunity to allege additional facts in support of their claim that the licensing requirement itself is unconstitutional, and seeing Plaintiffs have alleged no further facts in support of this claim, the Court holds once again that Plaintiffs do not have standing to challenge the licensing requirement of the Act.

### ii.  Ministerial Exception

Foothills raises a free exercise claim under the ministerial exception, claiming injury where it was not allowed to retain the preschool director of its choice, who it alleges occupied a ministerial position in the church.  Foothills claims she was unlawfully removed from her post because she acted in accordance with the church's sincerely held religious beliefs regarding parental authority when it comes to the health of children.  (FAC ¶¶ 111–14.)

The ministerial exception exists as protection from state interference in the governance of religious institutions where it comes to ministers.  § 4:34. Religious exemptions to employment discrimination law, 1 Religious Organizations and the Law § 4:34 (2d).  As far as this Court has found and the parties have cited, the ministerial exception has by and large been used by religious institutions to shield their employment preferences from employment discrimination claims.

Therefore, courts have not conducted a standing analysis as it relates to the ministerial exception because the ministerial exception is an affirmative defense, as declared by the Ninth Circuit. *Puri v. Khalsa*, 844 F.3d 1152, 1158 (9th Cir. 2017).  Thus, it must be raised as a shield against claims brought against the church, rather than as sword, or claim by the church against the state.  *See* Fed. R. Civ. P. 8(c)(1).  The appropriate time

and place to raise such an affirmative defense in this case was when Foothills initially responded to the state's action in removing Foothills' preschool director, when it may have shielded Foothills' employment decisions, and not now as its own affirmative claim.

Plaintiffs recognize the argument that "choice of clergy by a religious institution is solely an affirmative defense." (Resp. at 17:2–3.) However, they cite to no case refuting this argument. The two cases they cite are both instances of the ministerial exception applied as affirmative defense. *See Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2064 (2020) (where the ministerial exception was raised to shield a religious institution from an employment discrimination claim); *see also Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N. Am.*, 344 U.S. 94, 116 (1952) (where the ministerial exception was raised to shield a religious institution from a transfer of power from one sect to another). Neither party cites to any case where a religious institution wielded the ministerial exception as a sword, not a shield. This Court shall not create such a doctrine. Recognizing that any further amendment with respect to this claim would be futile because this claim fails as a matter of law and thus any additional facts could not make the claim plausible, any claim raised on the basis of the ministerial exception must necessarily be dismissed with prejudice.

### iii.   Parental Authority Regarding Healthcare for Children.

Plaintiffs allege that DSS' actions against Foothills when it did not comply with the mask mandate abrogated Plaintiffs' free exercise rights under the First Amendment because Foothills holds a sincerely held religious belief that parents have total autonomy to make decisions related to the health of their children. (*See, e.g.*, FAC ¶ 26.) Plaintiffs argue Foothills' preschool director was making decisions in accordance with that belief when she did not enforce the mask mandate at Foothills' preschool because several students' parents did not wish for their child to mask at preschool. Such action was in contravention of DPH orders in place at the time. (*Id.* ¶¶ 26–30.) Plaintiffs argue Foothills' free exercise rights were thus harmed when DSS revoked its license and removed its

preschool director as a consequence for non-compliance with provisions of the Act.  (*Id.* ¶ 30; Resp. at 19:3–6.)

For these alleged injuries, Plaintiffs seek declaratory and injunctive relief.  (FAC at 34 ¶¶ 1–2.)  Therefore, they run into the same redressability issue already discussed by this Court in its last Order dismissing Plaintiffs' original Complaint.  (*See* ECF No. 19 at 36:11–27.)  That DSS imposed financial penalties on Foothills, closed the preschool, and removed the preschool director, cannot be redressed by declaratory and injunctive relief because "[n]either injunctive nor declaratory relief may be premised on past injury." *Schumacher v. Inslee*, 474 F. Supp. 3d 1172, 1175 (W.D. Wash. 2020) (citing, *inter alia*, *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983).  An exception to this general proscription exists only where the plaintiff alleges "a sufficient likelihood that [it] will again be wronged in a similar way." *Lyons*, 461 U.S. at 111.

Foothills has not alleged any facts plausibly stating that there is a sufficient likelihood it will endure a similar injury in the foreseeable future: enforcement action for failure to abide by the DPH's COVID-19 masking orders applicable to child healthcare centers.  Like the original Complaint, the FAC does not allege circumstances suggesting the DPH will reinstate these orders.  For this reason, Foothills fails to show the injunctive and declaratory relief it seeks will redress its alleged injuries and, therefore, Foothills again falls short of establishing standing.  Having already granted Plaintiffs leave to amend, this Court shall now dismiss the claim with prejudice.

### iv.   Religious Services Provision

Plaintiffs allege in the FAC that the Act requires licensed preschools to allow children to attend religious services of their own choosing.  (FAC ¶ 116.)  It further asserts that if Plaintiffs were to allow this, it would be "irreconcilable with the thousands of years of Christian practice," which mandates that children not be allowed "personal religious autonomy." (*Id.* ¶ 117.)  Plaintiffs claim these requirements "impose[] a substantial burden on the free exercise" of Plaintiffs' religion.  (*Id.* ¶ 118.)

Plaintiffs' allegations in the FAC do not add to the ones already made in their original Complaint.  In evaluating these allegations in its original Dismissal Order, the Court held that Plaintiffs do not have standing because the facts listed in the Complaint, and now again in the FAC, do not amount to the required injury-in-fact for a pre-enforcement challenge.  (*See* ECF No. 19 at 29:3–35:13.)  Because Plaintiffs have not provided additional factual allegations in their FAC, the Court shall not now reverse itself and find standing where before it found none.  Plaintiffs have not sufficiently alleged their proposed course of conduct of the mandatory religious curriculum is proscribed by law but protected by the Constitution, and have further failed to plausibly allege that the proposed conduct risks a credible threat of enforcement against them.  For example, Plaintiffs still point to no instances where daycare centers or preschools were punished under the Act for teaching a mandatory religious curriculum. (*See generally* FAC.)  Therefore, having before dismissed this particular claim with leave to amend, and amendment now proving futile in plausibly asserting the claim, the Court dismisses with prejudice Plaintiffs' free exercise claim regarding the religious services provision of the Act.

### 2.      Standing in the Context of Establishment of Religion

The Establishment Clause of the First Amendment prohibits the government from making any law "respecting an establishment of religion."  U.S. Const. Amend. I.  It is extended to the states through the Fourteenth Amendment.  *Freedom from Religion Found. v. Hanover Sch. Dist.*, 626 F.3d 1 (1st Cir. 2010).

Plaintiffs' challenge to the Act on the grounds it violates the Establishment Clause of the First Amendment is also a pre-enforcement challenge because their argument lies in the Act exempting two religious institutions from the licensure requirement but requiring each of the Plaintiffs to be licensed under the Act.  However, Foothills has not attempted to regain its license, and both Grove and Journey have not attempted to obtain daycare licenses in the first place.  (*See generally* FAC.)  Defendants argue that Plaintiffs' Establishment Clause claim "fails to identify any religious-based harm" and therefore Plaintiffs lack standing to bring the claim.  (Mot. at 13:6–8.)

Standing analysis under the Establishment Clause is uniquely "elusive" where it comes to identifying a concrete injury "because the Establishment Clause is primarily aimed at protecting non-economic interests of a spiritual, as opposed to a physical or pecuniary, nature." *Cath. League for Religious & C.R. v. City & Cnty. of San Francisco*, 624 F.3d 1043, 1049 (9th Cir. 2010). In summarizing Supreme Court cases on this issue, the Ninth Circuit has noted that the Supreme Court has treated standing as sufficiently stated even where "nothing was affected but the religious or irreligious sentiments of the plaintiffs." *Id.* at 1050. Thus, "[a] 'psychological consequence' does not suffice as concrete harm where it is produced merely by 'observation of conduct with which one disagrees.' But it does constitute concrete harm where the 'psychological consequence' is produced by government condemnation of one's own religion or endorsement of another's in one's own community." *Id.* at 1052 (9th Cir. 2010) (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 485 (1982).

Under this precedent, the FAC alleges a sufficient injury for Plaintiffs to allege standing at this point in the case. The FAC points to how some other Christian organizations do not have to comply with the licensing requirements, but Plaintiffs do. (FAC ¶ 103.) Plaintiffs allege that to them this amounts to the endorsement of these other religious institutions which, drawing all inferences in favor of Plaintiffs, are in Plaintiffs' own community. (*See id.* ¶ 127.) Therefore, Plaintiffs plead enough to allege standing to bring an Establishment Clause claim at this juncture.

### 3. Standing in the Context of Due Process

Plaintiffs allege the Act imposes unconstitutional conditions as a requirement of licensure under the Act. (FAC ¶¶ 132–43.) To acquire and maintain a license, Plaintiffs aver they must waive constitutional rights guaranteed to them by the Fourth, Fifth, Sixth, and Seventh Amendments. (*See id.* ¶¶ 132–37.) Plaintiffs style this "unconstitutional-conditions" theory of the Act's invalidity as a claim arising under the Due Process Clause of the Fourteenth Amendment. (*Id.* ¶ 142 ("The rights listed above are enumerated in the Bill of Rights and made applicable to the States via the Fourteenth Amendment.").)

Defendants argue that Plaintiffs' Due Process Clause claim fails due to lack of standing because the claim has "the same harm and redressability problems the Court already recognized." (Mot. at 13:4–5.)  Additionally, Defendants argue Plaintiffs do not "proffer fact-based allegations or instances showing any actual violation or wavier of an applicable constitutional right." (*Id*. at 13:14–15.)

The bar for standing as it relates to due process is low.  Typically, simply alleging that procedures are inadequate establishes a sufficient injury-in-fact for Article III standing. That is because determining the adequacy of the process is generally a merits question, even if a plaintiff does not use the process provided. *See Cochran v. Illinois State Toll Highway Auth.*, 828 F.3d 597, 601 (7th Cir. 2016) (addressing, at the merits stage, the argument "the hearing to which [plaintiff] was entitled, but did not request, would not have provided him with a meaningful opportunity to be heard."); *see also Sevin v. Par. of Jefferson*, 632 F. Supp. 2d 586, 599 (E.D. La. 2008) ("[T]his Court would be remiss if it incorporated an assessment of the adequacy of . . . adjudication procedures, or the plaintiff's failure to take advantage of those procedures, into its standing analysis."). "Otherwise, in order to have standing, a plaintiff would always have to show the inadequacy of the due process—the central claim." *Hughes v. City of Cedar Rapids, Iowa*, 840 F.3d 987, 993–94 (8th Cir. 2016).

Therefore, in that Plaintiffs have alleged the Act's procedures are broadly inadequate, the Court finds Plaintiffs have Article III standing to bring their due process claim.

### 4.    Standing in the Context of Free Speech

The Free Speech Clause of the First Amendment prohibits the government from making any law "abridging the freedom of speech." U.S. Const. Amend. I.  It is extended to the states through the Fourteenth Amendment. *See Edwards v. South Carolina*, 372 U.S. 229, 235 (1963) (collecting cases).

Modern Supreme Court jurisprudence "has dispensed with rigid standing requirements" for First Amendment free speech and free exercise claims. *See Tingley*, 47

F.4th at 1066–67 (quoting *California Pro-Life Council, Inc.*, 328 F.3d at 1094).  Now, allegations that a purportedly unconstitutional act, though not yet enforced against it, caused the plaintiff to self-censor are generally adequate to establish an injury-in-fact in the context of the First Amendment.  *See Libertarian Party of Los Angeles Cnty. v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013) ("[A] chilling of the exercise of First Amendment rights is, itself, a constitutionally sufficient injury.").  Still, when a plaintiff brings a pre-enforcement free speech claim as Plaintiffs do here, they still must show a concrete plan to engage in conduct affected with a constitutional interest, that the course of conduct is proscribed by a statute, and that a credible threat of prosecution under the statute exists. *Babbitt*, 442 U.S. at 298; *see also Driehaus*, 573 U.S. at 158 (same).

Plaintiffs' claim here may be broken out into two: first, a claim based on the prior infringement of Foothills' free speech rights vis-à-vis the compelled speech regarding masking (*see, e.g.*, FAC ¶ 32); second, a claim based on the possible future infringement of all of Plaintiffs' free speech rights regarding compelled speech about religious autonomy (*see, e.g., id.* ¶ 146).

### i.    Past Speech Regarding Masking

Plaintiffs allege DSS, when it required Foothills to share information about masking after a DSS investigation found Foothills was not complying with the mask mandate, violated Foothills' free speech rights by compelling its speech.  (*Id.* ¶ 32.)  Because DSS was acting under the authority of the Act when it required this of Foothills, Plaintiffs argue the Act violates the Free Speech Clause of the First Amendment.  (*Id.*)

This claim, as discussed in the prior order, runs into redressability issues because Plaintiffs seek declaratory and injunctive relief in their FAC—which is prospective rather than retrospective, and therefore unsuitable to redress the prior harm alleged.  *Schumacher v. Inslee*, 474 F. Supp. 3d 1172, 1175 (W.D. Wash. 2020) (citing, *inter alia*, *O'Shea*, 414 U.S. at 495–96); *see also Lyons*, 461 U.S. at 105.  Put simply, the relief sought will not redress the past harms alleged regarding compelled speech about masking.  Accordingly,

22cv0950

Plaintiffs have not pled for the appropriate form of relief so as to make this claim redressable and as such have not established standing.

### ii.      The Religious Services Provision

Plaintiffs allege the Act requires licensed daycares to give parents a form notifying parents of parents' power to designate the religious and spiritual activities of their children while in the care of the licensed daycare, and requires the daycare to post signage communicating the same "in a prominent and publicly accessible area inside the preschool." (FAC ¶ 146.) The content of the form and the accompanying signage contain messages that Plaintiffs "do not wish to communicate." (*Id.* ¶ 77.) Plaintiffs bring this claim pre-enforcement, so their standing is analyzed per *Babbitt* as follows below. *Babbitt*, 442 U.S. at 298.

Planned conduct that is affected with a constitutional interest. Here, Plaintiffs indicate they wish to communicate a message contrary to that required by the regulation: "that the school requires that pupils enrolled in the preschool attend religious services and engage in full participation in religious activities consistent with the faith and practices of the respective church." (FAC ¶ 148.) Plaintiffs further allege that the "government's message is not something which the Church-Plaintiffs wish to communicate to the public." (*Id.*) Courts have held it is a sufficiently concrete plan of conduct where a plaintiff "desire[s]" to do the allegedly illegal activity. *Driehaus*, 573 U.S. at 159. Therefore, Plaintiffs' plan is sufficiently concrete, but Defendants contest whether it is conduct affected with a constitutional interest.

Defendants argue that "requiring the public to be made aware of duly enacted laws and regulations is not compelling private speech about a particular message or viewpoint." (Mot. at 25:1–2.) They further argue that the required form and its contents are "government speech" because they are produced and approved by the State and thus "not subject to First Amendment scrutiny." (*Id.* at 25:5–7.) However, requiring the posting of notices as a condition of licensure constitutes a content-based speech restriction that is subject to First Amendment scrutiny, as held in *Nat'l Inst. of Fam. & Life Advocs. v.*

*Becerra*, 585 U.S. 755 (2018).   Therefore, this regulation falls outside the scope of government speech.   Plaintiffs sufficiently allege a concrete plan to perform conduct affected with a constitutional interest.

Proscribed by statute.   Plaintiffs aver that, despite enjoying Free Speech Clause protection, their desire to not share the religious autonomy message required under the Act's implementing regulations is forbidden under the same regulations.   (*See* FAC ¶¶ 4, 140–154 (addressing the religious services provision found at Cal. Code Regs. tit. 22, § 101223(a)(5)).)   Those provisions, Plaintiffs allege, require them to inform parents that a child is free to attend the religious services or activities of his or her choice—a message Plaintiffs do not wish to communicate.   (*Id.* ¶¶ 144–154.)   Indeed, Plaintiffs would violate the regulations by not having parents sign the form and by not posting signs informing students and parents of the right to religious autonomy.   Therefore, Plaintiffs' claim satisfies the second prong of pre-enforcement injury.

Credible threat of enforcement.   However, as noted above regarding Plaintiffs' Free Exercise claim, Plaintiffs allege no credible threat of enforcement on the part of DSS or the State more generally should Plaintiffs pursue their planned course of action.   "[T]he mere existence of a proscriptive statute [or] a generalized threat of prosecution" does not demonstrate a sufficiently credible threat of enforcement.   *Tingley*, 47 F.4th at 1067.   Here, Plaintiffs do not allege that enforcement authorities have communicated any specific warning or threat of enforcement, and further allege no history of past prosecution or enforcement.   Therefore, they lack standing to bring the action altogether because they do not allege injury sufficient to confer standing to bring a pre-enforcement Free Speech challenge to the Act.   Accordingly, Plaintiffs' claim regarding the Free Speech Clause of the First Amendment is dismissed without prejudice.

**B.    Stating a Plausible Claim**

Because Plaintiffs' other claims fail for lack of Article III standing, only the Establishment Clause and Due Process claims survive to Rule 12(b)(6) analysis. Accordingly, these claims are addressed below.

22cv0950

### 1. Establishment of Religion

Plaintiffs must allege something more than that "the Act's license exemption of two preferred religious institutions on the one hand and the general exclusion of all other churches on the other constitutes an establishment of religion in violation of the First Amendment." (FAC ¶ 127.) Such recitation of the elements is a classic example of the kind of "threadbare recitals of a cause of action's elements, supported by mere conclusory statements" spurned by *Twombly* and *Iqbal*. *Iqbal*, 556 U.S. at 663 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To analyze whether a practice violated the Establishment Clause, courts once applied what was called the "*Lemon* test," as developed in the seminal Supreme Court case of *Lemon v. Kurtzman*. 403 U.S. 602 (1971). However, nearly two years ago the Supreme Court abrogated *Lemon* and issued a new standard, requiring courts to examine a challenged practice by comparing it "to historical practices and understandings." *Kennedy*, 597 U.S. at 535 (citing *Town of Greece, N.Y. v. Galloway*, 572 U.S. 565, 576 (2014)).

Plaintiffs have not alleged sufficient, or any, facts to demonstrate that the Act, as it operates today, is violative of historical practices and understandings because the Act exempts the YMCA and Boy Scouts from daycare licensure. *See Kennedy*, 597 U.S. at 535–36. Therefore, Plaintiffs' FAC as it relates to this claim contains no more than a threadbare recitation of the elements that by allowing these two organizations, among nearly a dozen other organizations, to operate without licensure under the Act constitutes a violation of the constitutional freedom from Establishment of Religion. Accordingly, this claim is dismissed without prejudice.

### 2. Procedural Due Process

The FAC generally states that the Act violates Plaintiffs' due process rights by requiring daycares and preschools to waive the rights of staff, children, and parents in order for the daycare to receive a license from the State. (FAC ¶¶ 132–43.) However, the FAC does not go on to connect these waivers with a violation of due process because the FAC fails to allege which legally protected interest is at issue—such as liberty or property. *See*

*Mathews v. Eldridge*, 424 U.S. 319 (1976); *see also Mackey v. Montrym*, 443 U.S. 1, 1–2 (1979); *see also Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 588 (9th Cir. 1998). Rather, perplexingly, the FAC repackages, nearly paragraph for paragraph, the Privileges or Immunities Clause claim made in the original Complaint, but under a new header. *Compare* ECF No. 1 ¶¶ 100-10 *with* FAC ¶¶ 133–41.

Therefore, it is apparent that Plaintiffs misapprehend due process. The Fourth and Fifth Amendment challenges as framed in the FAC, for example, are quintessentially pre-enforcement constitutional challenges of their own and belong outside of the procedural due process "bucket." In other words, they are standalone claims not to be brought under another constitutional claim. Moreover, Plaintiffs bring no challenge to any process. Rather, they allege that in obtaining a daycare license, their Fourth and Fifth Amendment rights are violated. Plaintiffs allege no facts asserting a private interest jeopardized by a deficiency of process of any kind. Thus, they make no due process claim. Accordingly, this claim is dismissed without prejudice.

## V.   CONCLUSION

Accordingly, the Court rules as follows on Defendants' Motion to Dismiss Plaintiffs' FAC (ECF No. 24):

    1.  Free Exercise Clause

        a.  **GRANTED**, with prejudice, for lack of standing and failure to amend as to the Act's licensing requirement.

        b.  **GRANTED**, with prejudice, for lack of standing as to the ministerial exception.

        c.  **GRANTED**, with prejudice, for lack of standing and failure to amend as to Plaintiff's claim regarding the consequences Foothills encountered by refusing to comply with the mask mandate.

        d.  **GRANTED**, with prejudice, for lack of standing and failure to amend as to Plaintiffs' claim regarding the religious services provision.

2.  Establishment Clause

    a.  **GRANTED**, without prejudice, for failure to state a claim.

3.  Free Speech Clause

    a.  **GRANTED**, without prejudice, for lack of standing as to Foothills' claim regarding past compelled speech.

    b.  **GRANTED**, without prejudice, for lack of standing as to Plaintiffs' pre-enforcement claim regarding the religious services provision.

4.  Due Process Clause

    a.  **GRANTED**, without prejudice, for lack of standing as to Foothills' claim regarding the process it received.

    b.  **GRANTED**, without prejudice, for failure to state a cognizable claim as to Plaintiffs' claims regarding the licensing requirements.

If Plaintiffs wish to amend the claims for which leave to amend is granted, they must do so on or before **June 10, 2024**.

**IT IS SO ORDERED.**

**DATED: May 20, 2024**

Hon. Cynthia Bashant
United States District Judge

- 31 -

22cv0950